*442 Talbot, P.J.
The prosecution appeals as of right from a circuit court order granting defendant’s motion to suppress certain evidence and to dismiss the charge of delivery of 225 grams or more but less than 650 grams of a mixture containing cocaine, MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). We reverse.
At the hearing regarding defendant’s motion to suppress, the parties stipulated to allow the circuit court to decide the motion solely on the basis of the testimony taken at the preliminary examination.[1] At the preliminary examination, James Hall testified that he had been a friend of defendant’s for about thirty years. Acting in cooperation with the police, Hall telephoned defendant in Florida and arranged to buy some cocaine. Hall and defendant agreed that Hall would send a partial payment of $3,000 to Carolyn Kelly, in Florida. Upon receipt of the money, defendant would send the cocaine to Tim Reiter’s residence at 2220 East Court Street, Apartment 2, in the city of Flint. The cocaine was to be addressed to a “Mrs. Hoelzer or Hoelzen.” Upon satisfactory delivery, Hall was to send the $6,000 balance to the Florida address. Hall obtained $3,000 from the police and sent it to Kelly in Florida. A few days later, defendant telephoned Hall and informed him that the cocaine had been sent.
Flint Police Sergeant Alan McLeod testified that he intercepted and took into his possession a Federal Express package delivered to the residence at 2220 East Court Street in the city of Flint. The package *443 was addressed to “Jane Hoelzer.” The sender was listed as “John Hoelzer” of 400 Park Street, Hollywood, Florida. McLeod opened the package to discover a bubble cushion envelope containing a brown paper bag wrapped tightly around a Tupperware container that was taped shut. Inside the Tupperware container was a Ziplock bag containing a crystalline material that was later revealed to be 275 grams of a substance containing cocaine.
Working in conjunction with police in Florida, police from the city of Flint staged a delivery of the remaining balance of money “owed” to defendant for the cocaine. A Florida police officer, posing as a Federal Express delivery person, delivered $6,000 in a Federal Express envelope to a woman at Kelly’s Florida apartment. Shortly thereafter, McLeod went to the apartment and spoke to the woman. She identified herself as Kelly and authorized the officers to enter and search the apartment. Four or five police officers entered the apartment while six more officers waited outside. It was apparent that the officers were armed. In the course of their search, the police recovered the Federal Express envelope containing the cash. Shortly thereafter, defendant arrived at the apartment.
McLeod introduced himself and told defendant that he was involved in an investigation regarding some money that had been sent from Michigan to the Florida apartment. When he asked defendant if there was some place they could talk, defendant suggested the bedroom. Three police officers went into the bedroom with defendant. McLeod advised defendant that he was not under arrest and that he was not in custody. Defendant indicated to McLeod that he under: *444 stood that he was not under arrest. When asked about the $6,000, defendant explained that Hall sent it as repayment of a loan. Defendant denied knowing anyone whose last name was “Hoelzer,” and explained that he did not know who would be mailing cocaine to Hall. Defendant then consented to the search of his vehicle. Police recovered a date book with defendant’s name and address written on the front page. The word “Hoelzer” was written on the page for the day on which Hall had placed his order.
Before leaving Michigan, McLeod obtained a warrant for defendant’s arrest. During the interview in Florida, McLeod had the warrant in his possession. At the preliminary examination, McLeod testified that defendant would not have been allowed to “walk out of” the Florida apartment. This information was not conveyed to defendant. Sometime after defendant was questioned in the bedroom, he was arrested and moved to Michigan. The actual circumstances and timing of defendant’s arrest are not discernible from the lower count record.
After the preliminary examination, defendant moved to suppress (1) evidence of the Federal Express package mailed to the Flint apartment, (2) evidence of his exculpatory statements made to McLeod in Florida, and (3) all of the evidence seized in Florida. Defendant argued that the search and seizure of the Federal Express package was unconstitutional because the police did not have a warrant. The prosecution countered that defendant lacked standing. Defendant argued that his statements to the police in Florida were inadmissible because they *445 were obtained without the benefit of Miranda[2] warnings. The prosecution countered that Miranda warnings were not required because the statements were not made during a custodial interrogation. In a written opinion and order, the trial court suppressed evidence of the cocaine recovered from the Federal Express package on the ground that a warrant was necessary. The trial court also suppressed evidence of defendant’s exculpatory statements and the date book removed from his vehicle on the ground that they were both the product of an unlawful interrogation. On the basis of these rulings, the trial court dismissed the delivery charge.
On appeal, the prosecution again argues that defendant lacked standing to challenge the search and seizure of the Federal Express package containing the cocaine. We agree. To the extent a trial court’s decision regarding a motion to suppress is based on an interpretation of the law, appellate review is de novo. People v Marsack, 231 Mich App 364, 372; 586 NW2d 234 (1998). Factual findings made in conjunction with a motion to suppress are reviewed for clear error. People v Mendez, 225 Mich App 381, 382; 571 NW2d 528 (1997). The deferential “clear error” standard is the appropriate standard of review for findings of fact because the trial court is usually in a superior position to assess the evidence. See People v Mack, 190 Mich App 7, 17; 475 NW2d 830 (1991). In this case, however, the trial court made its decision solely on the basis of the preliminary examination transcript. Therefore, the trial court was in no better *446 position than this Court to assess the evidence, and there is no reason to give special deference to the trial court’s “findings.”
In Michigan, a person’s right to be secure from unreasonable searches and seizures is guaranteed by both the state and federal constitutions. See People v Smith, 420 Mich 1, 18-19; 360 NW2d 841 (1984), quoting Const 1963, art 1, § 11 and US Const, Am IV. The right is personal and may only be invoked “ ‘at the instance of one whose own protection was infringed by the search or seizure.’ ” Smith, supra at 17 and 24, quoting Simmons v United States, 390 US 377, 389; 88 S Ct 967; 19 L Ed 2d 1247 (1968). Thus, a defendant is said to have “standing” to challenge a search or seizure if, under the totality of the circumstances, he has a subjective expectation of privacy in the object of the search or seizure and the expectation of privacy is one that society is prepared to recognize as reasonable. Smith, supra at 28; see also Rakas v Illinois, 439 US 128, 143, n 12; 99 S Ct 421; 58 L Ed 2d 387 (1978). The defendant bears the burden of establishing standing. People v Lombardo, 216 Mich App 500, 505; 549 NW2d 596 (1996).
A wrapped package delivered by a private freight carrier, like a letter sent through the United States mail, is among the class of effects in which a member of the public may have a legitimate expectation of privacy. United States v Jacobsen, 466 US 109, 114; 104 S Ct 1652; 80 L Ed 2d 85 (1984); see also Lombardo, supra at 505. As a general rule, both the sender and the addressee have a legitimate expectation of privacy with regard to a mailed item while the item is en route. Upon delivery, the sender’s legitimate expectation of privacy terminates. See 4 LaFave, Search and *447 Seizure (2d ed), § 11.3(f), pp 341-346; see also United States v King, 55 F3d 1193, 1195-1196 (CA 6, 1995); United States v DiMaggio, 744 F Supp 43, 46 (ND NY, 1990). In this case, defendant has admitted that he sent the Federal Express package in question.[3] On the bases of defendant’s admission and the fact that the package was carefully wrapped, the trial court concluded that defendant had standing to contest the search and seizure of the package. While it is undisputed that defendant would not have a privacy interest worthy of constitutional protection if he did not send the package, see, e.g., United States v Koenig, 856 F2d 843, 846 (CA 7, 1988), we are not persuaded that his role in instigating the delivery of the package was, in itself, sufficient to establish standing to challenge its eventual search and seizure.
Defendant has failed to establish any connection between himself and the package beyond the fact that he was the person who caused its delivery by Federal Express. Nothing in the record suggests that defendant was known as “John Hoelzer,” the name listed on the package as being the sender, and there is no apparent connection between defendant and the return address listed on the package. In DiMaggio, supra, a federal district court held that the true sender’s legitimate expectation of privacy “vanishes” when his identity is not indicated on the surface of the package. In such a case, “it is as if the package had been abandoned since by withholding from soci *448 ety that he is the source, [the true sender] has effectively repudiated any connection or interest in the item vis-a-vis society, and no longer has the means to exclude others from intruding upon the contents of the package.” Id. at 46 (citation omitted); see also United States v Wood, 6 F Supp 2d 1213, 1224 (D Kan, 1998). A person can deprive himself of standing by abandoning the object of the search or seizure. See People v Jordan, 187 Mich App 582, 589; 468 NW2d 294 (1991), citing People v Mamon, 435 Mich 1, 4; 457 NW2d 623 (1990) (Riley, C.J.). We are persuaded by, and adopt, the reasoning employed by the federal district court in DiMaggio, supra. Accordingly, we hold that by effectively abandoning the package and its contents in the manner described, defendant has abandoned his right to challenge the search and seizure of the package.[4]
Next, the prosecution argues that the trial court erred in concluding that McLeod’s questioning of defendant in the Florida apartment ran afoul of *449 Miranda. In particular, the prosecution contends that Miranda warnings were not required because defendant was not in custody during the interview. We agree. On appeal, the issue whether a person is in custody for purposes of Miranda is a mixed question of law and fact that must be answered independently after review de novo of the record. Mendez, supra at 382; see also Marsack, supra at 372 (explaining that mixed questions of law and fact are reviewed de novo).
It is well settled that Miranda warnings need be given only in situations involving a custodial interrogation. People v Anderson, 209 Mich App 527, 532; 531 NW2d 780 (1995). The term “custodial interrogation” means “ ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ ” People v Hill, 429 Mich 382, 387; 415 NW2d 193 (1987), quoting Miranda, supra at 444. To determine whether a defendant was in custody at the time of the interrogation, we look at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he was not free to leave. People v Roark, 214 Mich App 421, 423; 543 NW2d 23 (1995). The determination of custody depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned. Stansbury v California, 511 US 318, 323; 114 S Ct 1526; 128 L Ed 2d 293 (1994).
In this case, the trial court’s conclusion that defendant was in custody when he was questioned by the police was based in large part on McLeod’s testimony *450 that defendant would not have been allowed to “walk out of” the Florida apartment if he had attempted to do so.[5] This consideration was improper. Because McLeod’s intention to prevent defendant from leaving the apartment was not conveyed to defendant, it could not have had any bearing on a defendant’s understanding of the situation. Stansbury, supra at 323-324. That aside, the limited record does not support a conclusion that defendant was in custody when questioned. The trial court found that the interrogation occurred in a room selected by defendant and that defendant was assured he was not in custody or under arrest; moreover, McLeod’s testimony indicates that the duration of the interrogation was brief.[6] Cf. People v McElhaney, 215 Mich App 269, 278-279; 545 NW2d 18 (1996). Therefore, Miranda warnings were not required, and evidence of the few exculpatory statements made by defendant in the Florida apartment should not have been suppressed.
Finally, the prosecution argues that the trial court erred in suppressing evidence of the date book recov *451 ered during the search of defendant’s vehicle. We agree. As noted, the trial court suppressed evidence of the date book seized from defendant’s vehicle on the ground that it was “derived from” an improper interrogation. Because we now hold that the interrogation was proper, there remains no basis for the suppression of evidence of the date book. In any event, even if the interrogation had been improper, it would not have provided a basis for suppressing the evidence seized from the vehicle. The record is clear that defendant consented to the search, and, aside from the fact that the search was later in time, nothing suggests that it was related to the interrogation in any way.
Because we hold that the trial court erred in suppressing evidence of (1) the cocaine recovered from the Federal Express package, (2) defendant’s exculpatory statements made to McLeod in the Florida apartment, and (3) the date book recovered from defendant’s vehicle, we reverse the trial court’s order dismissing the case.
Reversed.
McDonald, J., concurred.

 Under MCR 6.110(D), parties may stipulate to the use of a preliminary examination transcript to resolve a motion to suppress. See People v Kaufman, 457 Mich 266, 275-276; 577 NW2d 466 (1998).

 See Miranda v Arizona, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

 The trial court stated in its opinion and order that, “for purposes of establishing standing,” defendant “has admitted that he sent the package.” Although the admission itself is not readily apparent in the lower court record, we will defer to the trial court’s understanding of defendant’s position below.

 Our resolution in this case is consistent with the rule established in Lombardo, supra. There, the issue was whether a woman had standing to challenge the search and seizure of a package intended for delivery to her address but not to her name. The police seized the package en route and delivered a “look-alike” package to the defendant’s apartment. The defendant, who was the sole tenant of her apartment, signed for the “look-alike” package under a fictitious name different than her own name and the name on the package. Despite the fact that defendant expected to receive the package, and possessed the look-alike package when it was delivered, this Court held that she did not have standing to object to its search and seizure because she could not establish any connection between herself and the name listed on the package as the intended recipient. Id. at 505-509. The Lombardo Court further indicated that, even if the defendant had been able to establish a connection between herself and the apparently fictitious name on the package, it “would still be inclined to find a lack of Fourth Amendment standing because the use of the alias was part of a criminal scheme.” Id. at 509, citing United States v Daniel, 982 F2d 146, 149 (CA 5, 1993) (surmising that a defendant would not have standing based on an alias where use of the alias was part of a criminal scheme).

 In its opinion and order, the trial court reasoned as follows:
The facts indicate that when Officer McLeod questioned Defendant that several officers were present in the apartment and the surrounding area. Officer McLeod admits that he did not issue a Miranda warning, and that he told Defendant he was not in custody. However, Officer McLeod testified that Defendant Zahn would not have been able to “walk out of there.”
Contrary to the implication of the concuriing/dissenting opinion, the trial court made no finding of historical fact that “defendant could reasonably have believed he was not free to leave, even though the officer told him otherwise.” Further, as noted in our discussion of defendant’s first issue, there is no reason to give special deference to the trial court’s factual findings in this case because the trial court made its ruling on the basis of the preliminary examination transcript.

 The trial court made no specific finding with respect to the duration of the interrogation.