# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MAX THOMAS PRZYSUCHA,

        Defendant-Appellant.

UNPUBLISHED
March 28, 2017

No.  335272
Ottawa Circuit Court
LC No.  16-040340-FH

Before:  STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In this interlocutory appeal, defendant, Max Thomas Przysucha, appeals by leave granted[1] the trial court's order denying defendant's motion to suppress statements made during police questioning.  Because we conclude that defendant was in custody at the time of the questioning, we reverse the trial court's order.

Defendant argues that he was "in custody" when he was interviewed at the police station, and that the police were therefore required to give *Miranda*[2] warnings.  We note at the outset that there is no dispute that defendant did not receive *Miranda* warnings.  The sole issue on appeal is whether defendant was "in custody" for purposes of *Miranda*.

Defendant preserved this issue for appeal through his motion to suppress the statements in the trial court.  *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014).

"On appeal, the issue whether a person is in custody for purposes of *Miranda* is a mixed question of law and fact that must be answered independently after review de novo of the record."  *People v Zahn*, 234 Mich App 438, 449; 594 NW2d 120 (1999).  An appellate court "review[s] a trial court's factual findings in a ruling on a motion to suppress for clear error."  *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013).  "A finding of historical fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite

---

[1] *People v Przysucha*, unpublished order of the Court of Appeals, entered November 28, 2016 (Docket No. 335272).

[2] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-1-

and firm conviction that a mistake has been made." *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, the review is de novo." *Elliott*, 494 Mich at 300-301. An appellate court "review[s] de novo the trial court's ultimate decision concerning a motion to suppress." *People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013).

"In *Miranda*, the United States Supreme Court held that the Fifth Amendment's prohibition against compelled self-incrimination requires that the accused be given a series of warnings before being subjected to 'custodial interrogation.' "[3] *Elliott*, 494 Mich at 301, quoting *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). In other words, if a person is in custody, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed" before any questioning occurs. *Miranda*, 384 US at 444. "If the custodial interrogation is not preceded by an adequate warning, statements made during the custodial interrogation may not be introduced into evidence at the accused's criminal trial." *Elliott*, 494 Mich at 301.

"It is well settled that *Miranda* warnings need be given only in situations involving a custodial interrogation." *Zahn*, 234 Mich App at 449. "Custodial interrogation" is " 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *Elliott*, 494 Mich at 305, quoting *Miranda*, 384 US at 444. "Custodial interrogation occurs during incommunicado interrogation of individuals in a police-dominated atmosphere," which is an atmosphere that "generate[s] inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Elliott*, 494 Mich at 305 (quotation marks and citations omitted).

We have explained that "[t]o determine whether a defendant was in custody at the time of the interrogation, we look at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he was not free to leave." *Zahn*, 234 Mich App at 449; see also *Howes v Fields*, 565 US 499, ___; 132 S Ct 1181, 1189; 182 L Ed 2d 17 (2012) (quotation marks and citations omitted; alteration in the original) ("In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."). "[I]n order to determine how a suspect would have gauge[d] his freedom of movement, courts must examine all of the circumstances surrounding the interrogation." *Fields*, 565 US at ___; 132 S Ct at 1189 (quotation marks and citations omitted; second alteration in the original). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of

---

[3] Both the United States Constitution and the Michigan Constitution protect the right to be free from compelled self-incrimination. US Const, Am V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); Const 1963, art 1, § 17 ("No person shall be compelled in any criminal case to be a witness against himself . . . .").

physical restraints during the questioning, and the release of the interviewee at the end of the questioning. *Id*. (quotation marks and citations omitted). "The determination of custody depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned." *Zahn*, 234 Mich App at 449. In addition to considering "whether an individual's freedom of movement was curtailed," courts consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Fields*, 565 US at ___; 132 S Ct at 1189-1190.

The *Miranda* requirement is not automatically triggered merely because the questioning occurs at the police station or because the interviewee is a police suspect. See *Oregon v Mathiason*, 429 US 492, 495; 97 S Ct 711; 50 L Ed 2d 714 (1977) (holding that the defendant was not in custody where he went to the police station voluntarily, was immediately told that he was not under arrest, and left the police station after the 30-minute interview); accord *Mendez*, 225 Mich App at 383, 384 (holding that the defendant was not in custody for *Miranda* purposes where the defendant chose the time of the interview after receiving a police letter requesting an interview, drove himself to the police station, was told at the beginning of the interview that he was not under arrest, was interviewed for 1½ hours, was left alone in the interview room without restraints, and was allowed to leave after giving written answers to some questions and being told by the investigators that they did not believe his answers).

In *Zahn*, 234 Mich App at 450, this Court concluded that the defendant was not in custody when he was questioned, and that *Miranda* warnings were not required, because the defendant selected the room where the interrogation occurred, the interrogation was "brief,"[4] and the defendant "was assured that he was not in custody or under arrest." The length of the interrogation is not the deciding factor. In *Fields*, the United States Supreme Court held that the respondent was not in custody for *Miranda* purposes where the respondent was interviewed by two armed deputies for five to seven hours in a separate room of the jail where he was incarcerated, one of the deputies spoke to the respondent in "a very sharp tone," the door was sometimes open and sometimes shut, the respondent was free of physical restraints, and the respondent was told multiple times that he could leave "whenever he wanted." *Fields*, 565 US at ___; 132 S Ct at 1186-1187, 1193, 1194. Additionally, an interviewee is not automatically considered to be in custody simply because the police did not inform the interviewee that he or she could leave at any time. All of the circumstances of the interrogation must be considered. See *Elliott*, 494 Mich at 308-309, 309 n 4, 322 (in holding that the defendant was not subjected to custodial interrogation, the Court stated, "We note, as does the dissent, that one difference between this case and *Fields* is that defendant in this case was never told that he was free to leave the meeting and return to his cell. However, given that the meeting in this case lasted approximately 15 to 25 minutes, and the one in *Fields* lasted for five to seven hours, we do not think this fact is particularly compelling, much less dispositive, under the circumstances.").

---

[4] The *Zahn* Court noted that there was no finding by the trial court regarding the actual duration of the interrogation, 234 Mich App at 450 n 6, so the definition of "brief" is unclear.

However, when police indicate that an interviewee *will* be free to leave at some future time, it implies that the interviewee is *currently* in custody. In *People v Roark*, 214 Mich App 421, 423-424; 543 NW2d 23 (1995), this Court held that a defendant was in custody at the time of interrogation, even though the defendant had been informed by the police officer that she would be released after she posted bond. The defendant in *Roark* was involved in a traffic accident, and the investigating officer at the scene discovered that there were outstanding warrants for the defendant's arrest. *Id*. at 422. The defendant approached the police cruiser as the officer was confirming the validity of the warrants, and the officer asked the defendant to sit in the back seat of the cruiser. *Id*. The officer informed the defendant of the outstanding warrants and the requirement that she post a $330 bond. *Id*. After conducting a consent-based search of the defendant's vehicle while defendant was still in the cruiser, the officer informed the defendant "that upon posting the bond she would be free to leave." *Id*. at 423. Before the defendant left the cruiser, the officer questioned her and she made an incriminating statement. *Id*. The trial court had denied the defendant's motion to suppress her statements, ruling that the defendant was no longer in custody and *Miranda* warnings were not required "because defendant had been advised that she would be free to leave upon posting the bond." *Id*. at 422, 423. The *Roark* Court noted that "it is the position of the prosecutor and the trial court that defendant was not in custody because the officer had advised her that he would not be transporting her to jail, but that she would have the opportunity to post a cash bond and be released." *Id*. at 423.

The *Roark* Court reversed the trial court's ruling and held that the defendant was in custody and that *Miranda* warnings were required, reasoning as follows:

> In sum, defendant had been requested to sit in the back of the police cruiser and was aware that there were outstanding warrants and that she would be required to post a bond as a condition of being released. Under the totality of the circumstances, we do not believe that a reasonable person would believe that he was free to leave until such time as bond was posted and the officer released him. The fact that defendant was aware that she would be released at some point in the future does not alter the fact that, until that release occurred, she was in custody. Furthermore, we are aware of no authority that stands for the proposition that there is an exception to the requirements of *Miranda* where a suspect is informed that he will eventually be released. In short, defendant remained in custody until released. Accordingly, *Miranda* warnings were required. [*Id*. at 424.]

In the instant case, Lieutenant Joseph Boyle contacted defendant and asked him if he would come to the police station to discuss a home invasion that had occurred on Grant Street which was one of a series of such crimes in the area. Defendant drove himself to the police station where he was interviewed by two armed police offers in plain clothes. Defendant was not physically restrained during the interview and was never told that he was under arrest or directly informed that he could not leave. However, defendant was told at the beginning of the interview, "Before we get going, I want to let you know that no matter what you say to me, you're free to leave when everything's done." Throughout the interview, Lieutenant Boyle made similar comments. He said, "Did I tell you today you're going to be free to leave when you're done? Yes. You're going, you're going out of this office." Lieutenant Boyle also stated, "I told you you're leaving here, and I'm a man of my word. I mean it. But I'm not going to let you go out

there all depressed and worried about yourself [defendant]." He also stated, "I told you you're going to be able to leave here and that you're not going to jail. I told you that. But [defendant], I can't let you sit by yourself at home." These statements clearly focus on defendant's *future* liberty: he *will* be free to leave *once the interview is concluded.*

Furthermore, Lieutenant Boyle made additional statements demonstrating that he, and not defendant, was the one in control of determining when the interview would be "done." Lieutenant Boyle stated:

> Alright, so we're going to get through this step by step. I want to, I want to be clear on Grant Street. We're going to come back to the other people's houses. What time did you go to the house on Grant Street?

Lieutenant Boyle also stated:

> So there's some things that I don't know. But that doesn't negate the fact that you've been in at least 12 houses, some of which you don't even know or are afraid to share at this point. But we'll get through it. You'll sit here and then all of a sudden you'll think of a name and bring it up . . . ."

Under the totality of the circumstances and considering the objective circumstances rather than any subjective intent Lieutenant Boyle may have possessed, a reasonable person would have assumed that Lieutenant Boyle would decide when the interview was over, and a reasonable person would not have felt free to terminate the interrogation and leave before that time came. *Fields*, 565 US at ___; 132 S Ct at 1189; *Zahn*, 234 Mich App at 449; *Roark*, 214 Mich App at 424. Lieutenant Boyle's statements show his intent to keep defendant in the interview room until he provided sufficient information about the home invasions. Lieutenant Boyle pressed defendant for information about further home invasions to which defendant had not yet confessed. When Lieutenant Boyle paused in questioning, Detective Tithof would advance:

> We're not getting anywhere. We know there are more, you just don't remember them. Let's just get past this, so we can lay it out for everybody. We can be done with the whole thing, by listing them all out.

Both the lieutenant and detective offered to drive defendant around the neighborhood so defendant could point out the additional homes they believed were involved.

There were other circumstances surrounding the interrogation that were indicia that defendant's liberty was significantly constrained. For example, when defendant was given a bathroom break, he was frisked, he was asked if he had any box cutters or similar items, and he emptied his pockets and left his car keys and possessions in the interview room. Defendant was also escorted to and from the bathroom by both officers. In addition, when defendant asked whether he could take a cigarette break, Lieutenant Boyle asked Detective Tithof if he could take defendant outside, to which Detective Tithof responded, "Yes, we can stand outside." Clearly, defendant was not allowed to leave the interrogation room unescorted. Accordingly, defendant could not have left the police station at that time if he had desired.

When defendant denied involvement in the home invasions, Lieutenant Boyle persisted in telling defendant to be honest with him, and Lieutenant Boyle confronted defendant with evidence of his involvement in the incidents. Moreover, Lieutenant Boyle's statement, "I told you you're leaving here, and I'm a man of my word. I mean it." shows his attempt to assure defendant that he would in fact be released—an assurance that would be unnecessary if defendant was not currently being prevented from leaving on his own volition. There were no statements made to defendant during the interview indicating that defendant could actually stop the interview at any time. In fact, Lieutenant Boyle stated that he would not allow defendant to leave in defendant's current mental state. ("I'm not going to let you go out there all depressed and worried about yourself"). A promise of eventual release does not except an interrogation from the *Miranda* requirements. *Roark*, 214 Mich App at 424. Therefore, under the totality of the circumstances, defendant was in custody until Lieutenant Boyle determined that the interview was "done" and that defendant was free to leave. *Id*. This defendant was subjected to the same inherently coercive pressures that were at issue in *Miranda*. As the United States Supreme Court has stated, "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 US at 467. Furthermore, "the coercion inherent in custodial interrogation derives in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained." *Minnesota v Murphy*, 465 US 420, 433; 104 S Ct 1136; 79 L Ed 2d 409 (1984), reh den 466 US 945 (1984). Here, as previously discussed, a reasonable person would have felt that he was required to remain in the interview room until Lieutenant Boyle determined that the interview was over, and Lieutenant Boyle's statements implied that the interview would be "done" after they discussed the home invasions "step by step" and defendant provided confessions related to the series of home invasions. Thus, a reasonable person would have felt the coercive pressure that the interrogation would continue until he confessed. *Murphy*, 465 US at 433.

Therefore, the trial court erred by determining that defendant was not in custody for *Miranda* purposes. *Zahn*, 234 Mich App at 449.

Here, the parties do not dispute that defendant was subjected to interrogation; indeed the record evidence clearly shows that defendant was questioned by the police about his involvement in the series of home invasions and responded by making incriminating statements. Because defendant was subjected to custodial interrogation, *Miranda* warnings were required; defendant's statements made during the interview may not be introduced into evidence because the requirements of *Miranda* were not met. *Elliott*, 494 Mich at 301. The trial court erred by denying defendant's motion to suppress the statements. *Cortez*, 299 Mich App at 691.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola