*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOEL PETER VENEMA,

        Defendant-Appellant.

UNPUBLISHED
May 11, 2023

No. 363058
Kent Circuit Court
LC No. 21-008146-FH

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

Defendant appeals by interlocutory leave granted[1] the trial court's denial of defendant's motion to suppress his custodial statements in response to a police officer's interrogation. We vacate the trial court's order and remand for further proceedings.

## I. FACTUAL BACKGROUND

In August 07, 2022, defendant allegedly assaulted Jackie Beard at a hotel. According to court filings, defendant entered the hotel's pool area obviously intoxicated and using loud profanity. Beard asked defendant to keep the profanity down because of nearby children. Defendant responded with repeated racial slurs at Beard and attempted to engage Beard in a fight. Beard turned to walk away, but defendant assaulted Beard while continuing to use racial slurs. Once the police arrived defendant was arrested. Defendant was then placed in the back of a police car and transported to jail. While defendant was in the back of the police car, Grand Rapids Police Department Officer Kurtis Modderman provided defendant *Miranda*[2] warnings and asked if defendant would answer some questions. Specifically, the following exchange occurred between defendant and Officer Modderman:

---

[1] *People v Venema*, unpublished order of the Court of Appeals, entered December 12, 2022 (Docket No. 363058).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Officer Modderman*: So, before I start asking you any questions, can you hear me okay first of all?

*Mr. Venema*: Yes, sir.

*Officer Modderman*: I am going to read your rights, okay?

*Mr. Venema*: Yup.

*Officer Modderman*: You have the right to remain silent. Anything you say can be used against you in the court of law. You have the right to the presence of a lawyer before and during any questioning. If you wish a lawyer and cannot afford one, the Court will appoint one before any questioning. Do you understand the rights?

*Mr. Venema*: It is pry [sic] a bad idea since I haven't been driving. You know what I mean? You are really into shit trouble—

\* \* \*

*Mr. Venema*: Let's go. let's go play games. Bring me—bring me to jail.

*Officer Modderman*: Do you understand—

*Mr. Venema*: Oh, you are in f-----g trouble dude.

*Officer Modderman*: Do you understand your rights?

*Mr. Venema*: Oh yeah. Oh yeah. Absolutely. Let's go to jail.

*Officer Modderman*: Okay. So having those in—

*Mr. Venema*: Absolutely. Let's go.

*Officer Modderman*: Do you mind if I ask you a few questions?

*Mr. Venema*: Bring me to f---ing jail dude. Let's have fun. Because I wasn't even—I was walking around when you picked me up n----r. Let's go. Let's go buddy because I wasn't even driving. Let's go play games n----r. Let's go play games. Let's go. Bring me to jail mother f---er. Bring me to jail mother f---er. Bring me to jail. Bring me to jail.

*Officer Modderman*: Can I ask you a few questions or no?

*Mr. Venema*: No. Bring me to jail. Because I guarantee you I didn't do nothing f-----g wrong but walk around. Let's go.

*Officer Modderman*: You didn't assault anybody earlier today?

-2-

Officer Modderman proceeded to interrogate defendant about the earlier assault and administer a preliminary breath test. Afterward, defendant spent the entire ride to the jail making threats and rambling about a variety of unrelated topics.

Defendant was charged with assault with the intent to do great bodily harm less than murder or by strangulation, MCL 750.84; assaulting, resisting, or obstructing a police officer, MCL 750.81d(1); and ethnic intimidation, MCL 750.147b. He moved to suppress his statements to Officer Modderman following his arrest. He argued that he was not responsive to the provided *Miranda* warnings because of his intoxication. The prosecution argued that, upon information and belief, defendant understood the provided *Miranda* warnings despite his intoxication, so defendant's statements to Officer Modderman were voluntary.

The trial court held a *Walker*[3] hearing on defendant's motion to suppress. The parties agreed, in lieu of actual testimony, to allow the trial court to determine "[t]he sole issue in this case [, which] [wa]s whether the statement was made voluntarily—knowingly and voluntarily" and "[t]he only question [wa]s the defendant's level of intoxication", and to determine that issue with three pieces of evidence: (1) the video, (2) a noncertified video transcription, and (3) two stipulations. The parties stipulated that defendant was highly intoxicated and had a blood alcohol level of 0.276%. The parties also stipulated that Officer Modderman, if he testified, believed that defendant (1) was highly intoxicated; (2) understood, but gave a valid waiver to the provided *Miranda* warnings; and (3) was responsive to questions.

The trial court denied defendant's motion to suppress. The trial court found that, under the totality of the circumstances, defendant's statements were voluntary. The trial court recognized that intoxication was a factor to consider, but the trial court found that defendant's intoxication did not result in any involuntary statements. The trial court concluded that he understood and voluntarily waived his rights. The trial court did not address whether his waiver of his rights was knowing and intelligent. Finally, even if persuaded that he did not voluntarily waive his rights, the trial court noted that defendant's statements were voluntary and not in response to the interrogation. The trial court stayed proceedings pending the outcome of defendant's interlocutory appeal.

Defendant filed an interlocutory application for leave to appeal, which this Court granted. *People v Venema*, unpublished order of the Court of Appeals, entered December 12, 2022 (Docket No. 363058). Specifically, this Court directed:

> In addition to the issues raised in the application and supporting brief, the parties shall also brief the issue whether defendant asserted his right to remain silent when he responded "No! Bring me to jail" after the police officer posed the question: "Can I ask you a few questions, or no?" and whether the officer's continuation of his questioning of defendant in light of defendant's response violated defendant's Fifth Amendment rights. [*Id.*]

---

[3] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

## II.  WAIVER OF *MIRANDA* WARNINGS

### A.  PRESERVATION OF ISSUE

An issue regarding suppression of a statement to the police is preserved for appeal if a defendant challenges the admissibility of the statement, typically by moving for a *Walker* hearing, in the trial court. *People v McCrady*, 244 Mich App 27, 29; 624 NW2d 761 (2000).  Following a *Walker* hearing, the trial court denied defendant's motion to suppress defendant's custodial statements in response to the police officer's interrogation.  Consequently, this issue is preserved for appeal.

### B.  STANDARD OF REVIEW

This Court reviews "de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014).  This Court reviews de novo questions of law relevant to a motion to suppress evidence. *People v Hawkins*, 468 Mich 488, 496; 668 NW2d 602 (2003).  This Court also reviews de novo an application of the law to the facts. *People v Aldrich*, 246 Mich App 101, 116; 631 NW2d 67 (2001).  This Court reviews for clear error any findings of fact made by the trial court at a suppression hearing. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).  "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996).  This Court gives deference "to the trial court's assessment of the weight of the evidence and credibility of the witnesses" when determining if a finding of fact is clearly erroneous. *People v Shipley*, 256 Mich App 367, 373; 662 NW2d 856 (2003).

### C.  ANALYSIS

Defendant argues that the trial court clearly erred by determining that his statement to the police was knowing, intelligent, and voluntary, and not taken in violation of the United States and Michigan Constitutions.  Specifically, he argues that his waiver of his rights was not valid because he was intoxicated.  We disagree.

"The United States Constitution and the Michigan Constitution both prohibit 'compelled' self-incrimination." *People v Elliott*, 494 Mich 292, 301 n 4; 833 NW2d 284 (2013), citing US Const, Am V and Const 1963, art 1, § 17.  "A criminal defendant enjoys safeguards against involuntary self-incrimination during custodial interrogations." *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014).  Consequently, before any custodial interrogation of an accused, he must be warned that he had a right to remain silent, that his statements could be used against him, and that he had the right to retained or appointed counsel. *Miranda v Arizona*, 384 US 436, 444, 479; 86 S Ct 1602; 16 L Ed 2d 694 (1966).  As protected by the Fifth Amendment, any statement of an accused made during custodial interrogation is not admissible unless the prosecution shows that before any questioning, he was advised of his constitutional rights and that he voluntarily, knowingly, and intelligently waived those rights. *Id*.; *People v Tanner*, 496 Mich 199, 207-208; 853 NW2d 653 (2014).

Whether a waiver is voluntary is dependent on the absence of police coercion. *People v Eliason*, 300 Mich App 293, 304; 833 NW2d 357 (2013), remanded on other grounds 496 Mich 440 (2014). An evaluation of voluntariness focuses on "whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988) (quotation marks and citation omitted). A trial court should consider factors such as:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.]

A trial court should also consider the defendant's overall mental and physical state and any promises of leniency. *People v Gipson*, 287 Mich App 261, 265; 787 NW2d 126 (2010). A single factor is not necessarily conclusive. *People v Sexton*, 461 Mich 746, 753; 609 NW2d 822 (2000). "A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Gipson*, 287 Mich App at 264-265.

Whether a waiver is knowing and intelligent "requires an inquiry into [a] defendant's level of understanding, irrespective of police conduct." *Id*. at 265. A knowing waiver does not require a suspect to "understand the ramifications and consequences of choosing to waive or exercise the rights that the police have properly explained to him." *People v Cheatham*, 453 Mich 1, 28; 551 NW2d 355 (1996). An intelligent waiver only requires a defendant's minimal level of understanding that he or she does not have to speak, that he or she has the right to counsel, and that statements could be used in a later trial against him or her. *People v Abraham*, 234 Mich App 640, 647; 599 NW2d 736 (1999).

Defendant was in custody and subject to interrogation by a police officer at the time in question. As a result, defendant was entitled to *Miranda* warnings, which the police officer provided. At issue is whether defendant waived his rights. He specifically argues that his alleged waiver (1) was not in response to the police officer's question and (2) was not a voluntary, knowing, and intelligent waiver because of his intoxication.

As an initial matter, we disagree with defendant that defendant's response to the police officer's question was not a waiver. Specifically, the relevant exchange in question is as follows:

> *Officer Modderman*: Do you understand your rights?
>
> *Mr. Venema*: Oh yeah. Oh yeah. Absolutely. Let's go to jail.
>
> *Officer Modderman*: Okay. So having those in—

*Mr. Venema*: Absolutely. Let's go.

Even if, as defendant argues, his response of "[a]bsolutely," was attached to his statement, "Let's go to jail," we conclude that defendant's repeated response of "Oh yeah" was in response to the police officer's question whether he understood his rights. We interpret his entire response as (1) understanding his rights and then (2) inviting the police officer to take him to jail. Accordingly, we find that he waived his rights because he understood, but dismissed, his rights.

After determining that defendant's response included a waiver, the next step is to determine whether defendant's waiver was voluntary, knowing, and intelligent, or, in other words, a valid waiver. Defendant argues that any waiver was not voluntary, knowing, and intelligent because of his level of intoxication. We conclude otherwise, and will first address how defendant's waiver was voluntary and then how defendant's waiver was knowing and intelligent.

First, we conclude that defendant's waiver was voluntary considering the totality of the circumstances. See *Cipriano*, 431 Mich at 333-334. The trial court noted that "[d]efendant was thirty-nine (39) years old at the time" of arrest so defendant was by no means a naïve or young adult. Additionally, the trial court also noted that "[d]efendant had past experience with law enforcement." The trial court found that "there [was] no indication of any deficit in intelligence or maturity that might make" defendant's will susceptible to being overborne, which we agree with in light of observing no such deficit when reviewing the video. The entire interrogation was approximately seven minutes; however, we cannot discern how long defendant was in custody before the interrogation started. The police officer informed him of his constitutional rights before the interrogation started. Further, we cannot find evidence from the video that defendant was either denied or deprived of sleep, food, drink, or necessary medical care before or during the interrogation. The trial court found that the police officer "did not use any physical or verbal coercion," which we agree with because we cannot find evidence from the video that defendant was either physically abused, threatened with force, or coerced before or during the interrogation. Finally, we cannot find evidence from the video that the police officer made any promises of leniency before or during the interrogation.

Despite the fact that defendant was highly intoxicated and had a blood alcohol level of 0.276%, defendant appeared very alert and oriented to time and place throughout the interrogation. Defendant did not slur his words and was not at all lethargic during the interrogation. Defendant was able to engage in conversation and, for the most part, offer appropriate responses to the police officer's question. Even though "[i]ntoxication from alcohol or other substances can affect the validity of a waiver of" rights protected by the Fifth Amendment, like the other factors, intoxication is not dispositive. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). Our review of the video supports that, under the totality of the circumstances, defendant's custodial statements were voluntarily made in response to the police officer's interrogation. Contrary to defendant's argument, the trial court did not err by concluding that defendant's waiver was voluntary because not once throughout the interrogation was defendant's will overborne or capacity for self-determination critically impaired.

Second, we conclude that defendant's waiver was knowing and intelligent. He was a mature adult who had previous experience with the police. He engaged with the police officer throughout the interrogation, and even asked questions on multiple occasions. He guessed at his

blood alcohol level after he agreed to a preliminary breath test. His ramblings on topics unrelated to the assault were coherent and consistent. His responses to the police officer's questions were, for the most part, responsive. He appeared very alert and oriented to time and place throughout the interrogation. He knew who he was speaking to and what was happening around him. Our review of the video confirms that the trial court did not err in finding that defendant's statements were knowing and intelligent. Accordingly, defendant's waiver was knowing and intelligent because defendant evidently understood that he did not have to speak, that he had the right to counsel, and that statements could be used in a later trial against him.

Given the evidence in the record, the trial court did not err by not suppressing defendant's statements to the police officer on the basis of defendant's waiver because defendant's waiver was voluntary, knowing, and intelligent despite defendant's intoxication. However, this is not the end of the analysis. Although he initially waived his rights, there remains a question whether defendant invoked his right to silence later in the interrogation.

### III. INVOCATION OF RIGHT TO REMAIN SILENT

### A. PRESERVATION OF ISSUE

An issue is preserved if the issue was raised in the trial court. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Although neither issue was raised in the trial court, this Court ordered the parties to address (1) whether defendant later invoked the right to silence and (2) whether the police officer's subsequent interrogation violated defendant's right to remain silent. *Venema*, unpub order. Consequently, both issues are deemed preserved for appeal. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) ("This Court . . . has the power to consider an issue when necessary, even if unpreserved or not properly presented.").

### B. STANDARD OF REVIEW

This Court reviews de novo questions of constitutional law. *People v Leblanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews de novo an application of the law to the facts. *Aldrich*, 246 Mich App at 116. This Court reviews for clear error any findings of fact made by the trial court at a suppression hearing. *Williams*, 472 Mich at 313. "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Swirles (After Remand)*, 218 Mich App at 136. This Court gives deference "to the trial court's assessment of the weight of the evidence and credibility of the witnesses" when determining if a finding of fact is clearly erroneous. *Shipley*, 256 Mich App at 373. There is no reason to give special deference to the trial court when "the trial court was in no better position than this Court to assess the evidence . . . ." *People v Zahn*, 234 Mich App 438, 445-446; 594 NW2d 120 (1999). This Court, like the trial court, watched and listened to the same video of defendant's custodial interrogation that was provided to the trial court.

### C. ANALYSIS

In light of the order granting leave to appeal, defendant argues that the police's continued questioning violated defendant's later-invoked right to silence as protected by the United States and Michigan Constitutions.

Initially, we acknowledge that the right to remain silent includes the right to invoke that right after initially waiving it and cut-off any further interrogation, *Henry (After Remand)*, 305 Mich App at 145; "however, the assertion must be unequivocal" and unambiguous. *Id.* A trial court may properly consider events preceding the response or nuances inherent in the response itself, but a defendant's response to interrogation after invoking the right to remain silent "may not be used to cast retrospective doubt on the clarity of the initial request itself" or used to argue that the invocation of the right to remain silent was equivocal. *Smith v Illinois*, 469 US 91, 100; 105 S Ct 490; 83 L Ed 2d 488 (1984).

After determining that a defendant unequivocally invoked the right to remain silent, this Court next considers whether defendant's "right to cut off questioning was scrupulously honored." *People v Catey*, 135 Mich App 714, 725; 356 NW2d 241 (1984) (quotation marks and citation omitted). "When a defendant invokes his or her right to remain silent, the police must scrupulously honor the defendant's request." *Henry (After Remand)*, 305 Mich App at 145 (quotation marks and citation omitted). "The police fail to scrupulously honor a defendant's invocation of the Fifth Amendment right by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Id.* (quotations marks and citation omitted). "If the police continue to interrogate the defendant after he has invoked his right to remain silent," then any statement that the defendant made as a result of that interrogation is inadmissible. *People v White*, 493 Mich 187, 194; 828 NW2d 329 (2013).

We are asked whether defendant unequivocally invoked the right to remain silent, despite an initial waiver, when he stated, "No. Bring me to jail." The prosecutor seems to confess error, stating in its brief that, "At this point, the officer should have stopped any questioning." But we are not convinced that we should blindly accept the prosecutor's confession of error. As the Supreme Court stated in *Berghuis v Thompkins*, 560 US 370, 385; 130 S Ct 2250; 176 L Ed 2d 1098 (2010), "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Here, defendant, without any prompting by the officer, after saying, "No. Bring me to jail" immediately continues talking to the officer, continuing to deny any wrongdoing.[4] It is less than clear that any invocation of the right to remain silent was, in fact, clear and unequivocal.

But the trial court has not been afforded the opportunity to initially address this issue. In fact, at the hearing below, the parties stipulated that the only issue before the trial court was whether defendant's waiver of his rights was knowingly and voluntarily made considering his level of intoxication:

> [THE PROSECUTOR]: So what Mr. Stanley [defense attorney] and I have agreed to and stipulated to is that in lieu of actual testimony, the best evidence that we have is the videotape, so we're going to admit the videotape as a stipulated exhibit, for the motion only, as Exhibit 1. And then there's going to be a transcript

---

[4] The trial court, in its opinion on the voluntary waiver issue, did comment that, after the officer asked if he could ask defendant questions, defendant "initially said 'no,' but he continued to speak to the officer and answer questions regarding the alleged assault."

that we're going to admit, stipulated to, as Exhibit 2 which the Court can then use and watch to make its determination. *The sole issue in this case is whether the statement was made voluntarily—knowingly and voluntarily. The only question is the defendant's level of intoxication in determining that, and we'd ask the Court to review that.* [Emphasis added.]

\* \* \*

[THE PROSECUTOR]: And the only other stipulation from the People's side is that the officer who is present and would have testified that he believed that the defendant was highly intoxicated but also was responsive to his questions when he asked.

[THE COURT]: And, well, the officer would also testify that he appeared to understand his rights and –

[THE PROSECUTOR]: Correct.

[THE COURT]: -- and gave a valid waiver?

[THE PROSECUTOR]: Correct, your Honor. I believe the Court will hear that when he asks him, he—the defendant—he asked him if he understood his right, and the defendant indicated, "oh year"—something to the effect of "oh year," but the Court will hear that for its own ears.

\* \* \*

[THE COURT]: Okay. All right. And, Mr. Stanley, do you agree with everything that Mr. Lachman stated?

[DEFENSE ATTORNEY]: I do, you Honor.

Later in the hearing, the trial court reiterated what it viewed as the relevant issue before it:

All right. And I'll just state for the record that the only portion that I would think would be relevant for this hearing is the *Miranda* warnings and then the conversation following the *Miranda* warnings and not the entire conversation, but the portion of it where—if Mr. Venema did, in fact, waive and say he would talk, that initial portion would be what I would be focusing on *because that's what the motion is about, to suppress the statements and saying that he did not knowingly waive his rights.* [Emphasis added.]

We conclude that the trial court should resolve these issues in the first instance. The importance of this issue being first addressed by the trial court cannot be understated. First, there is the need to make the factual determination whether defendant did, in fact, clearly and unequivocally assert his right to remain silent after having initially waived it. Second, even if we

-9-

were to conclude that he did so assert his right, there would remain the need to determine what, if any, of his statements following that assertion would need to be suppressed.

Volunteered statements made without police interrogation are not subject to the *Miranda* rule. *Miranda*, 384 US at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); *Rhode Island v Innis*, 446 US 291, 300; 100 S Ct 1682; 64 L Ed 2d 297 (1980). In the case before us, large portions of defendant's statements were volunteered and unprompted by Officer Modderman's questioning. Indeed, at times Officer Modderman was not even in the patrol car and defendant continued talking. And during the drive to the Kent County Jail, defendant talked nonstop with little or no comments by the officer. In its opinion, the trial court did, in the context of ruling on the voluntariness issue, conclude that much of what defendant said was volunteered:

> Furthermore, most of Defendant's statements were not the product of police questioning, but rather voluntarily given by Defendant outside of any interrogation.

> When viewing all of these circumstances, Defendant had the capacity to understand his rights and he voluntarily waived them. Furthermore, even if this Court were persuaded that Defendant did not voluntarily waive his *Miranda* rights, the video footage shows *most of Defendant's statements were given on his volition and not in response to police interrogation*. The video and totality of the circumstances show Defendant's statements were voluntarily given. [Emphasis added.]

In sum, the parties stipulated that the "sole issue in this case" is whether defendant's intoxication rendered his waiver of rights involuntary. As a result, the trial court was not afforded the opportunity to make findings of fact and conclusions of law regarding whether defendant did, in fact, clearly and unequivocally invoke his right to remain silent after initially waiving it. Accordingly, we cannot conclude on the record before us whether defendant's right to remain silent was properly invoked, nor, even if it were, whether portions of his statement would nevertheless be admissible as volunteered statements.

## IV. CONCLUSION

The trial court did not clearly err by finding that defendant's waiver was voluntary, knowing, and intelligent despite defendant's intoxication. However, we remand this case to the trial court to determine whether (1) defendant clearly and unambiguously invoked his right to remain silent and (2) if he did, whether portions of defendant's statements are otherwise admissible as voluntarily provided, and for further proceedings.

We affirm and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney