*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LOUIS SINDONE,

        Defendant-Appellant.

UNPUBLISHED
April 11, 2019

No. 340328
Wayne Circuit Court
LC No. 17-000304-01-FH

Before: SHAPIRO, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Christopher Sindone, appeals as of right his bench trial convictions of second-degree arson, MCL 750.73(1), and preparation to burn a dwelling, MCL 750.79(1)(d)(*vi*). Defendant's convictions arise out of a dispute during the holidays between defendant and his estranged wife, Jennifer Sindone (Sindone), which led to defendant setting fire to Sindone's trailer on December 24, 2016. The trial court sentenced defendant, as a third habitual offender, MCL 769.11, to 12 to 40 years' imprisonment for second-degree arson and 5 to 10 years' imprisonment for preparation to burn a dwelling. We affirm defendant's convictions but reverse and remand for resentencing.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant challenges his convictions on grounds that the prosecution failed to prove beyond a reasonable doubt that the trailer[1] at issue is a "dwelling"; therefore, the prosecution

---

[1] Sindone described her home as a "mobile home," however the prosecutor and others repeatedly refer to it as a trailer. We deem the distinction irrelevant under the circumstances. We also note that defendant contradicted Sindone's testimony and claimed that he and Sindone purchased the trailer together; however, we view the evidence for a sufficiency of the evidence argument in the light most favorable to the prosecution. And in any event, ownership of the trailer is not relevant for purposes of the statutes under which defendant was convicted.

failed to prove each and every element of second-degree arson and preparation to burn a dwelling pursuant to MCL 750.73(1) and MCL 750.79(1)(d)(*vi*), respectively. Defendant contends that the trailer was dilapidated and uninhabitable. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). "When reviewing a claim of insufficient evidence following a bench trial, this Court must review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Hutner*, 209 Mich App 280, 282; 530 NW2d 174 (1995). It is the role of the fact-finder, rather than this Court, to determine the weight of the evidence and the credibility of witnesses. *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). This Court resolves any evidentiary conflicts in favor of the prosecution. *Id*.

To be guilty of second-degree arson, the prosecution must prove beyond a reasonable doubt that the defendant "willfully or maliciously burne[d], damage[d], or destroye[d] by fire or explosive a dwelling, regardless of whether it [was] occupied, unoccupied, or vacant at the time of the fire or explosion, or its contents." MCL 750.73(1). With respect to preparation to burn a dwelling, MCL 750.79 provides in pertinent part:

> (1) A person who uses, arranges, places, devises, or distributes an inflammable, combustible, or explosive material, liquid, or substance or any device in or near a building, structure, other real property, or personal property with the intent to commit arson in any degree or who aids, counsels, induces, persuades, or procures another to do so is guilty of a crime as follows:
>
> * * *
>
> (d) If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $15,000.00 or 3 times the combined value of the property damaged or destroyed, whichever is greater, or both imprisonment and a fine:
>
> * * *
>
> (*vi*) The property is a dwelling. This subparagraph applies regardless of whether the person owns the dwelling.

MCL 750.71(d), which is applicable to the offenses at issue, defines a "dwelling" as including, but not limited to "any building, structure, vehicle, watercraft, or trailer adapted for human habitation that was actually lived in or reasonably could have been lived in at the time of the fire or explosion and any building or structure that is within the curtilage of that dwelling or that is appurtenant to or connected to that dwelling."

Sufficient evidence supports a finding that Sindone's trailer constitutes a dwelling within the meaning of MCL 750.71(d). The prosecution presented ample evidence that Sindone had

been living in the trailer for approximately one month when the fire occurred. Sindone testified that she purchased the trailer on November 29, 2016 in order to move out of the family home and remove herself from the marriage with defendant. She spent the night in the trailer between the time of its purchase and the night of the fire. She ate meals in the trailer. She kept her clothing, her children's clothing[2], Christmas decorations, shovels, and bedding at the trailer. There was a couch in the living room, a working bathroom, and three bedrooms. She also had water and electricity hooked up to the residence, both of which were working on the night of the fire.

Laurie Stasa, defendant's mother, testified that Sindone lived in the trailer. Woodhaven Police Sergeant Nick Grunwald testified that he observed an air mattress and bedding inside the trailer. Defendant also testified that he slept on an air mattress in Sindone's bedroom inside the trailer on December 24, 2016. While there was evidence that the trailer needed repairs and lacked a functioning kitchen, the prosecution presented sufficient evidence that it was "adapted for human habitation" and that Sindone "actually lived in or reasonably could have" lived in the trailer at the time of the fire. See MCL 750.71(d). Accordingly, the prosecution presented sufficient evidence that Sindone's trailer constituted a dwelling for purposes of second-degree arson and preparation to burn a dwelling.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because his trial counsel failed to argue that Sindone's trailer did not qualify as a dwelling, failed to utilize an arson investigator, and did not object to the prosecution's use of evidence that was obtained illegally. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must make a motion in the trial court for a new trial or an evidentiary hearing. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Because defendant raised his claims of ineffective assistance of counsel for the first time on appeal, they are unpreserved. When no *Ginther*[3] hearing is held, this Court reviews claims of ineffective assistance of counsel based on the facts contained in the existing record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Whether effective assistance of counsel has been denied is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews questions of constitutional law de novo, and factual findings, if any, are reviewed for clear error. *Jordan*, 275 Mich App at 667.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 N.W.2d 136, 143 (2012). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have

---

[2] Defendant and Sindone have twin children together.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

been different." *Id*. Counsel's performance is presumed to be effective, and the defendant bears a heavy burden of demonstrating otherwise. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). There is also a strong presumption that defense counsel's decisions constitute sound trial strategy. *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

Defendant first claims that his counsel was deficient in failing to argue that Sindone's trailer was not a dwelling within the meaning of MCL 750.79(1) and MCL 750.79(1)(d)(*vi*). For the reasons we have already addressed with respect to the sufficiency of the evidence, defendant's argument lacks merit. The prosecution presented ample evidence to establish that Sindone's trailer was a dwelling for purposes of second-degree arson and preparation to burn a dwelling. Had defense counsel raised the issue, she would have been unsuccessful. Trial counsel's failure to raise a meritless argument or a futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, it is apparent from the record that defense counsel was aware of the trailer's condition and made the strategic decision to pursue a defense that defendant accidentally started the fire, rather than one that focused on the condition or state of the trailer. This Court does not second-guess counsel on matters of trial strategy, *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), and it does not substitute its own judgment for that of trial counsel regarding strategy, "even if that strategy backfired." *People v Rodgers*, 248 Mich App 702, 715; 645 NW2d 294 (2001). Accordingly, defendant fails to demonstrate that he was denied the effective assistance of counsel on this ground.

Defendant also argues that defense counsel was ineffective because she failed to utilize an arson investigator to present evidence that defendant did not intentionally start the fire, despite the trial court's appointment of an arson investigator on behalf of defendant. However, defendant fails to meet his burden of establishing a factual predicate to support his claim. See *People v Douglas*, 496 Mich 557, 593; 852 NW2d 587 (2014), citing *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant does not provide an affidavit indicating what an arson investigator's testimony would have been. Nor does he explain how an arson investigator would have shown definitively that the fire was accidental. Chief Clark testified that samples taken from Sindone's trailer did not indicate that accelerant was used to start the fire and that the cause of ignition was undetermined. Sergeant Grunwald also testified that he did not know what was used to start the fire. Presumably, defense counsel made the strategic decision not to use an arson investigator because the prosecution's evidence was consistent with the defense theory that defendant accidentally started the fire. Accordingly, defendant fails to demonstrate that defense counsel was ineffective on this ground.

Finally, defendant contends that defense counsel was ineffective because she failed to argue at trial that the police seized certain evidence in violation of his Fourth Amendment rights.[4] Defense counsel was clearly aware of this potential argument because the trial court addressed defendant's pro se motion before trial. Presumably, defense counsel made the

---

[4] Defendant raised this issue is a Standard 4 brief. A "Standard 4" brief refers to the brief a defendant may file in propria persona pursuant to Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

strategic decision not to raise the issue at trial because defendant did not have a possessory right to the trailer or to the items taken from it, and therefore, he did not have standing to challenge the constitutional validity of the search. See *People v Zahn*, 234 Mich App 438, 446; 594 NW2d 120 (1999) (noting that an individual's rights against unreasonable search and seizures is personal and can only be invoked by the person whose protections were infringed by the search or seizure), citing *People v Smith*, 420 Mich 1, 17-19; 360 NW2d 841 (1984). A defendant has standing "to challenge a search or seizure if, under the totality of the circumstances, he has a subjective expectation of privacy in the object of the search or seizure and the expectation of privacy is one that society is prepared to recognize as reasonable." *Zahn*, 234 Mich App at 446.

Sindone testified that she purchased the trailer herself and defendant's name was not on the deed, the contract, the landlord tenant agreement, or anything associated with the property. She also testified that defendant was not allowed inside the trailer, but at some point, without her permission, he had made a copy of her key. Defendant admitted that he was not personally involved in the purchase of the trailer, did not live at the trailer, and his name was not on any of the utility bills. Because defendant did not own the trailer or have any legal right to enter the property, he did not have a reasonable expectation of privacy in the trailer and therefore, he does not have standing to challenge the search and seizure of items from the trailer. Accordingly, defense counsel was not ineffective by failing to raise a meritless argument. See *Ericksen*, 288 Mich App at 201.

## III. DOUBLE JEOPARDY

Defendant argues that his convictions of second-degree arson and preparation to burn a dwelling must be vacated as a violation of double jeopardy because his convictions arise from the same conduct and involve multiple punishments. We disagree.

Defendant failed to preserve this claim of error by raising it in the trial court. See *People v Barber*, 255 Mich App 288, 291; 659 NW2d 674 (2003) (concluding that the defendant failed to preserve his argument on appeal that his convictions for burning real property and burning a dwelling home violated double jeopardy because the defendant raised the issue for the first time on appeal). Our review of unpreserved constitutional error is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764, 597 NW2d 130 (1999). To avoid forfeiture under the plain-error rule, the defendant must meet three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763, citing *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993). The third element generally requires the defendant to demonstrate "prejudice, i.e., that the error affected the outcome of the lower court proceeding." *Carines*, 460 Mich at 763. Even if the defendant can show all three elements, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763-764.

Both the United States and the Michigan Constitutions protect a criminal defendant from being twice put in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *Barber*, 255 Mich App at 291-292. This prohibition against double jeopardy protects individuals in three ways:

(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. The first two protections comprise the "successive prosecutions" strand of double jeopardy, while the third protection is known as the "multiple punishments" strand. [*People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015) (quotation marks and citation omitted).]

This case involves the multiple punishments strand of double jeopardy because defendant's convictions and sentences for second-degree arson and preparation to burn a dwelling concern the same conduct and the same trial. See *id*. at 17

The purpose of the multiple punishments strand of double jeopardy is "to ensure that courts confine their sentences to the limits established by the Legislature" and therefore acts as a "restraint on the prosecutor and the Courts." *Id*. at 17-18 (quotation marks and citation omitted). A double jeopardy violation does not occur when the Legislature "specifically authorizes cumulative punishments under" two separate statutes. *Id*. (citations and internal quotation marks omitted). However, when a statute's plain language clearly expresses the Legislature's intent to prohibit multiple punishments, a trial court violates the multiple punishments strand by cumulatively punishing "a defendant for both offenses in a single trial." *Id*. Accordingly, the Legislature's intent is a decisive factor in determining whether multiple punishments for the same offense violate double jeopardy. *Barber*, 255 Mich App at 292.

The proper test to determine whether multiple punishments are barred by Const. 1963, art 1, § 15 is the test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007); see also *People v Ream*, 481 Mich 223, 238; 750 NW2d 536 (2008) ("[T]he *Blockburger* test is a tool to be used to ascertain legislative intent.") The *Blockburger* test " 'focuses on statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.' " *People v Nutt*, 469 Mich 565, 576; 677 NW2d 1 (2004), quoting *Iannelli v United States*, 420 US 772, 785 n 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975). In addition, to reiterate, "[b]ecause the statutory elements, not the particular facts of the case, are indicative of legislative intent, the focus must be on these statutory elements."[5] *Ream*, 481 Mich at 238 (also referring to the *Blockburger* test as an "abstract legal elements" test).

In the instant case, the trial court convicted defendant of second-degree arson, MCL 750.73, and preparation to burn a dwelling, MCL 750.79(1)(d)(*vi*). A person is guilty of second-degree arson if he or she: 1) willfully or maliciously 2) burns, damages, or destroys by fire or explosive; 3) a dwelling or its contents. MCL 750.73(1). A person is guilty of preparation to burn a dwelling if he or she: 1) uses, arranges, places, devises, or distributes, 2) an inflammable, combustible, or explosive material, liquid, or substance or any device, 3) in or near a dwelling, 4)

---

[5] The *Ream* Court also refers to the *Blockburger* test as an "abstract legal elements test." *Reams*, 481 Mich at 239.

with the intent to commit arson in any degree. MCL 750.79(1)(d)(*vi*). Each crime "requires proof of a fact that the other does not." *Nutt*, 469 Mich at 576, quoting *Iannelli*, 420 US at 785 n 17. Second-degree arson requires the prosecution to prove that the defendant actually burned, damaged, or destroyed a dwelling by fire or explosive, whereas preparation to burn a building has no such element. Preparation to burn a dwelling only requires that the defendant used, arranged, placed, devised, or distributed something that could have caused arson near a dwelling with the intent to cause arson. MCL 750.79(1)(d)(*vi*). Nothing in the plain language of MCL 750.79(1)(d)(*vi*) requires the defendant to burn, damage, or destroy the dwelling, and nothing in the plain language of MCL 750.74(1) requires the defendant to undertake any specific preparations for burning the dwelling. Because each statute requires proof of an element that the other does not, the *Blockburger* test is satisfied, thus revealing the Legislature's intent that multiple punishments for the same criminal transaction do not violate the prohibition against double jeopardy. In short, defendant's convictions of second-degree arson and preparation to burn a dwelling do not violate double jeopardy.

## IV. SENTENCING

Defendant argues that the trial court erred when assessing points for offense variables (OVs) 1, 2, 4, 9, and 12, and that he is entitled to resentencing based on a resulting change in the guidelines. We agree that the trial court erred when assessing 20 points for OV 1 and 10 points for OV 9, which changes the guidelines and entitles defendant to resentencing.

This Court reviews a sentencing court's factual findings regarding scoring variables for clear error; the court's factual findings must be supported by a preponderance of the evidence. *People v Gloster*, 499 Mich 199, 204; 880 NW2d 776 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation," which this Court reviews de novo. *Id.* (quotation marks and citation omitted). Clear error exists if this Court is "left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). Further, the "trial court may consider all evidence in the record, including but not limited to" the presentencing investigation report (PSIR) as well as any "admissions made by a defendant during a plea proceeding." *People v Jackson*, 320 Mich App 514, 519; 907 NW2d 865 (2017).

### A. MCL 777.31 (OV 1) AND MCL 777.32 (OV 2)

OV 1 considers the aggravated use of a weapon. MCL 777.31(1). The trial court assessed 20 points for OV 1, which is appropriate if, "[t]he victim was subjected or exposed to a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device." MCL 777.31(1)(b). When "[n]o aggravated use of a weapon" has occurred, a zero-point assessment is appropriate. MCL 777.31(1)(f). OV 2 concerns the lethal potential of a weapon possessed or used. MCL 777.32(1). Under 777.32(1)(b), the trial court may assess 15 points for OV 2 when "[t]he offender possessed or used an incendiary device, an explosive

device, or a fully automatic weapon."[6] MCL 777.32(1)(b). OV 1 and OV 2 both define an incendiary device as including "gasoline or any other flammable substance, a blowtorch, fire bomb, Molotov cocktail, or other similar device." MCL 777.31(3)(b); MCL 777.32(3)(d).

A candle constitutes an incendiary device because it falls within the category of "other similar device." MCL 777.31(3)(b); MCL 777.32(3)(d). Defendant admitted that he started a fire—accidental or not—by lighting a candle and placing it near Sindone's air mattress in her bedroom. Although the prosecution did not establish at trial what defendant used to light the candle that started the fire, a candle falls within the category of "other similar device" because it is similar to a Molotov cocktail and fire bomb—both of which require an individual to set them on fire before being used to start a fire elsewhere. Even if a candle is not an incendiary device, there is sufficient evidence that defendant lit the candle with an incendiary device such as matches or a lighter.

Unlike OV 1, OV 2 does not require the trial court to find that a victim was involved. MCL 777.32(1)(b). Therefore, the trial court did not clearly err in assessing 15 points for OV 2 because there is a preponderance of the evidence that defendant possessed and used an incendiary device on December 24, 2016. However, the trial court clearly erred in assessing 20 points for OV 1 because a preponderance of the evidence does not support the trial court's finding that victims were exposed or subject to an incendiary device. See MCL 777.31(1)(b).

OV 1 requires that a victim be exposed to an incendiary device. MCL 777.31(1)(b). MCL 777.31(2)(a) defines a victim as a "person who was placed in danger of injury or loss of life." Although a first responder can be a victim, *People v Fawaz*, 299 Mich App 55, 62; 829 NW2d 259 (2012), the first responders in this case were not placed in danger of physical injury or loss of life. The fire was extinguished by the time the first responders entered Sindone's trailer. In fact, Sergeant Grunwald testified that the trailer was already secured when he arrived at the scene. Contrary to the prosecution's assertions, there was no evidence that the fire caused damage that compromised the structural integrity of the trailer. There was also no evidence that any neighbors were actually placed in danger. Accordingly, there was no evidence that anyone was placed in danger of injury or loss of life to warrant 20 points for OV 1.

---

[6] The trial court may also assess 15 points if "[t]he offender possessed or used a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, or harmful radioactive device." MCL 777.32(1)(a).

## B. MCL 777.34 (OV 4)[7]

OV 4 contemplates the psychological injury to a victim. MCL 777.34(1). The trial court assessed 10 points for OV 4, which is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The trial court may assign 10 points for OV 4 if the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). The fact that the victim did not seek treatment is not conclusive, MCL 777.34(2), and a trial court's observations of the victim's demeanor at trial can support a finding of psychological injury, *People v Schrauben*, 314 Mich App 181, 197; 886 NW2d 173 (2016). A trial court may not assign points "solely on the basis . . . that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim." *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017).

Because OV 4 concerns the "psychological injury to a victim," a victim is required in all cases in which OV 4 is scored. However, MCL 777.34 does not define "victim." This Court has not yet addressed whether an individual who suffered property loss as a result of the defendant's criminal offense but who was not physically present during the offense constitutes a victim within the meaning of MCL 777.34.[8] In *People v Laidler*, 491 Mich 339, 347; 817 NW2d 517 (2012), our Supreme Court defined a "victim" for the purposes of scoring OV 3, because MCL 777.33 does not define a "victim."[9] Turning to common dictionary definitions, our Supreme Court determined that " 'a victim' is any person who is harmed by the defendant's criminal actions" for the purposes of scoring OV 3. *Id.* at 348-349.[10]

The trial court determined that Sindone and the children were victims for purposes of scoring OV 4. When considering the definition of "victim" as adopted in *Laidler*, there is a preponderance of the evidence that Sindone suffered serious psychological injury requiring professional treatment. At trial, Laurie Stasa, defendant's mother, testified that defendant came to her house before 8:00 a.m. on December 24, 2016, the date of the offense. He was hurried and agitated, and he insisted that the kids leave with him immediately even though they were not wearing shoes. Stasa insisted that they dress due to the cold. Defendant told Stasa that he had

---

[7] MCL 777.34 has been amended, effective March 28, 2019. See 2018 PA 652. Under the new version of the statute, the trial court may assess five points for OV 4 if defendant was convicted under section 50b of the Michigan penal code and "serious psychological injury requiring professional treatment occurred to the owner of a companion animal." MCL 777.34(b) as amended by 2018 PA 652.

[8] We do note, however, that MCL 777.39 (OV 9) includes among its description of victims those who were placed in danger of property loss.

[9] OV 3 contemplates physical injury to a victim. MCL 777.33(1).

[10] *Laidler* limited its definition of a victim to MCL 777.31, acknowledging that the specific individual in that case may constitute a victim for purposes of scoring OV 3, but may not constitute a victim for the purposes of any other statute. *Laidler*, 491 Mich at 347 n 3.

"lit a candle to burn the place down so she won't no [sic] where to live." She asked him to repeat what he had just said, and he did. He told her that he had done so at 4:00 a.m. It was clear to Stasa that defendant was talking about Sindone's trailer. At sentencing, Sindone stated that she had been thinking about the event for months, that she and the children remained "very scared," that her daughter was having "nightmares" and that it "is very hard to calm her down." She expressed ongoing fear of defendant by herself and defendant's children.[11] This Court has previously held that a victim's statements of fear and anger support a score of 10 points for OV 4. See *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012) (concluding that the victim's statements that he felt angry, hurt, and fearful were sufficient to support an assessment of 10 points for OV 4). Therefore, the trial court did not clearly err in finding that Sindone suffered a psychological injury to warrant an assessment of 10 points for OV 4.

C. MCL 777.39 (OV 9)

OV 9 considers the number of victims. MCL 777.39. In pertinent part, MCL 777.39(1) provides:

(1) offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

\* \* \*

(b) there were ten or more victims who were placed in danger of physical injury or death, or twenty or more victims who were placed in danger of property loss ............................................................................................... 25

(c) there were two to nine victims who were placed in danger of physical injury or death, or four to nineteen victims who were placed in danger of property loss ............................................................................................... 10

(d) there were fewer than two victims who were placed in danger of physical injury or death, or fewer than four victims who were placed in danger of

---

[11] In a letter written to the Court for purposes of sentencing, Stasa wrote that defendant's son asked if they could still keep the knives hidden so that defendant's older son, who was 14 years old, could protect them from defendant if he ever came home. She noted that defendant's daughter expressed similar fear of defendant. It is not clear from the record whether the children spent time at the trailer, so we decline to consider whether the children were victims, but we can review the entire record to examine the psychological impact of the incident on Sindone.

While defendant points out that the victim's impact statement in the presentence investigation report (PSIR) indicates that Sindone said counseling was not necessary, she also said she would be at the sentencing and may want to address the court; in light of the statements Sindone and Stasa made at the sentencing hearing, as described above, a preponderance of the evidence supports the trial court's finding.

property loss ................................................................................................ 0

Under MCL 777.39(2)(a), a "person who was placed in danger of physical injury or loss of life or property" constitutes a victim for the purposes of scoring OV 9. A person may be considered a victim "even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). However, a victim must be a direct victim of the crime, rather than a member of the community that was indirectly affected by the commission of the crime. *People v Carrigan*, 297 Mich App 513, 515-516; 824 NW2d 283 (2012).

Sindone constitutes a victim for the purposes of scoring OV 9 because she suffered a loss of property when defendant lit her bedroom on fire. MCL 777.39(2)(a). The prosecution presented ample evidence that there was significant damage to Sindone's trailer, including smoke damage, burned walls and ceilings, a melted air mattress, and damage to other personal property.

Beyond Sindone, a preponderance of the evidence does not support the trial court's finding that there were "2 to 9 victims placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." See MCL 777.39(1)(c). As discussed, a first responder can be a victim for the purposes of scoring OV 9. *Fawaz*, 299 Mich App 55, 62; 829 NW2d 259 (2012). In *Fawaz*, two firefighters responded to a fire at the defendant's home and suffered actual physical injuries as a result of entering the house. *Id*. at 58, 63. The defendant's elderly neighbor, who lived only four feet away from the defendant's house, was escorted from her home to ensure her personal safety. *Id*. This Court held that all three individuals were " 'placed in danger of physical injury or loss of life' because of the fire that [the] defendant started" and therefore, were victims for the purposes of scoring OV 9. *Id*., citing MCL 777.39(1)(c).

The trial court clearly erred in assessing 10 points for OV 9 because the first responders were not placed in danger of physical injury or loss of life. By the time anyone stepped inside Sindone's trailer, the fire had been extinguished. The prosecution did not present any evidence that the fire was ongoing or that anyone who entered the house was injured or at risk of injury. Nor did the prosecution present any evidence that the structural integrity of the trailer was compromised such that it placed the first responders in danger. Moreover, a neighbor's concern for their safety does not mean that he or she is a victim. See *Fawaz*, 299 Mich App at 58, 63. A neighbor must be within a close proximity to a physically threatening situation. *Gratsch*, 299 Mich App at 624. There was no evidence that any of Sindone's neighbors were actually placed in danger of physical injury or loss of life. Therefore, the trial court clearly erred in assessing 10 points for OV 9. The trial court should have assessed zero points because Sindone was the only victim of defendant's conduct.

Defendant contends that the trial court clearly erred in assessing five points for OV 12. OV 12 considers contemporaneous felonious acts. MCL 777.42(1). However, the trial court actually assessed zero points for OV 12, and therefore, it is unnecessary to address this issue.

-11-

## D. RESENTENCING

"A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information." *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). When a sentencing court relies on an incorrectly scored guidelines range, the sentence imposed is invalid. *Id*. The trial court improperly assessed 20 points for OV 1 and 10 points for OV 9 when no points were warranted. Lowering the total OV points from 65 to 35, the corrected guidelines range would be 72 to 180 months. See MCL 777.63. Consequently, this matter must be remanded for resentencing.

Reversed and remanded. We do not retain jurisdiction.


/s/ Jane M. Beckering
/s/ Michael J. Kelly