*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CRAIG RICHARD PAKOSZ,

       Defendant-Appellant.

UNPUBLISHED
July 28, 2022

Nos. 352918; 356192
Shiawassee Circuit Court
LC No. 2019-004301-FC

Before: REDFORD, P.J., and SAWYER and MURRAY, JJ.

PER CURIAM.

A jury convicted defendant of assault by strangulation or suffocation, MCL 750.84,[1] and first-degree criminal sexual conduct (CSC-I), MCL 750.520b. He was sentenced to prison terms of 67 to 120 months for the assault conviction and 285 to 500 months for the CSC-I conviction, with the CSC-I sentence to be served consecutive to the assault by strangulation or suffocation sentence. Defendant now appeals and we affirm.

We turn first to defendant's claim that he was denied the effective assistance of counsel. Defendant raises numerous individual claims of ineffective assistance, none of which merit reversal. To preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or a *Ginther*[2] hearing to develop a record to support the claim. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant preserved his ineffective assistance of counsel claims by moving for a new trial and a *Ginther* hearing in the trial court, and by moving in this Court for remand for a *Ginther* hearing, both of which were denied. Therefore, this Court's review is limited to the existing record. *Id.* "This Court reviews a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion." *People v Cress*, 468 Mich

---

[1] Although the judgment of sentence states "[a]ssault/bod harm less," the allegations in the amended information alleged assault by strangulation or suffocation. See MCL 750.84(1)(b). The jury was instructed on the crime of assault by strangulation or suffocation.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

678, 691; 664 NW2d 174 (2003). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citation omitted). Findings of fact "are reviewed for clear error," while "constitutional determinations are reviewed de novo." *Id*. A finding is clearly erroneous if this Court is "left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

"The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). In order to establish the right to a new trial premised on ineffective assistance of counsel, "a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant's first claim of ineffective assistance of counsel is trial counsel's failure to advise the court that defendant was requesting new counsel because he believed existing counsel was inexperienced. The trial court rejected defendant's argument, noting that neither his "lack of confidence in his attorney, unsupported by a substantial reason" nor his "general unhappiness with counsel's representation" would warrant appointment of new counsel. As we noted in *People v Bauder*, 269 Mich App 174, 193; 712 NW2d 506 (2005), overruled in part on other grounds in *People v Burns*, 494 Mich 104, 112; 832 NW2d 738 (2013):

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic

"A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011) "Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id*. There is no objective evidence that trial counsel was incapable of handing this case, plus trial counsel was assisted at trial by an experienced public defender. This claim is without merit.

Next, defendant argues that counsel inadequately challenged the testimony of nurse Tonya Tenbusch. First, we are not persuaded that trial counsel's cross-examination of Tenbusch fell below an objective standard of reasonableness. Second, as the trial court noted in its decision on this issue, defense counsel's overall strategy at trial was to challenge the victim's overall credibility

rather than refute the minimal medical evidence presented by the prosecution. That is, the matters that defendant now complains of with respect to trial counsel's handling of Tenbusch's testimony has little effect on the trial strategy pursued at trial. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases," and "[t]here is accordingly a strong presumption of effective assistance of counsel." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). We will not substitute our judgment for that of defense counsel on such matters. *People v Jeft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

Defendant next argues that defense counsel was ineffective by failing to object to Holly Rosen's testimony regarding the patterns of victimization because the testimony purportedly vouched for the victim's credibility. Defendant relies on *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995). *Peterson* concluded that an expert may not offer an opinion as to whether the complainant is being truthful or on the defendant's guilt. *Id*. at 369. But the Court concluded that evidence can be offered to explain particular behavior. *Id*. The Court concluded that "[w]hen the credibility of the particular victim is attacked by a defendant, we think it is proper to allow an explanation by a qualified expert regarding the consistencies between the behavior of that victim and other victims of child sexual abuse." *Id.* at 375. In our case, the defense attacked the victim's credibility, including inconsistent statements and reports of the incident and delayed reporting. Rosen's testimony was meant to assist the jury in understanding aspects of the victim's behavior that are understood to be common among victims of sexual assault, but which jurors might find to be inconsistent with sexual assault or consistent with fabrication. Rosen did not opine on the victim's credibility or truthfulness. Therefore, an objection based upon a claim that Rosen vouched for the victim's credibility would have been without merit.

Defendant also argues that trial counsel should have objected to Rosen's testimony regarding strangulation as her qualifications lacked the expertise to testify in that area. The trial court rejected defendant's argument because it found that the argument was premised on the assumption that strangulation cannot be a form of domestic violence.[3] Defense counsel's failure to object was not objectively unreasonable in light of the lack of evidence that defense counsel was unprepared to cross-examine Rosen, as well as defense counsel's strategy of attacking the victim's credibility. This strategy was apparent in defense counsel's cross-examination of Rosen.

Defendant also argues that trial counsel failed to consult an expert to determine the accuracy of Rosen's testimony and was therefore ineffective because he was incapable of challenging her testimony regarding memory and the effect of trauma on memory. This argument was raised at the motion for new trial and the trial court rejected it, opining as follows:

> As stated, trial counsel pursued a theory of attacking the victim's credibility through non-technical impeachment. Trial counsel advanced this strategy by questioning Ms. Rosen and adducing the fact that she had never spoken to the victim. Trial counsel spoke to this issue at length in his closing argument. While this approach

---

[3] Rosen's curriculum vitae indicated that she was a licensed social worker and had 35 years of experience working with domestic violence victims.

did not ultimately persuade the jury, "a failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412[; 760 NW2d 882 (2008)] (cleaned up). The decision to focus on Ms. Rosen's lack of connection to the victim was a strategic one. Defendant now argues that defendant should have engaged in a battle of the experts instead. The Court declines to evaluate a strategic decision with the benefit of hindsight.

Initially, there is no record evidence as to whether or not defense counsel consulted a medical expert. Nonetheless, as noted by the trial court, in the context of defense counsel's chosen strategy, defendant has failed to show that counsel's cross-examination of Rosen was deficient. Counsel's performance was not objectively unreasonable.

We now turn to defendant's claim that defense counsel was ineffective by failing to retain a medical expert to determine whether the evidence presented by the prosecution corroborated the victim's allegations. The trial court found with respect to this argument:

> Consistent with the last issue, Defendant claims that trial counsel should have retained a medical expert to challenge medical evidence. Again, this is a decision that sounds in hindsight. Defendant relies on *People v Ackley*, 497 Mich 381[; 870 NW2d 858] (2015). However, the prosecution in *Ackley* had to rely on medical testimony due to a lack of eye witnesses and direct evidence. *Id*. at 385. In this case, the People note that they relied primarily on eyewitness evidence. Trial counsel pursued a strategy that challenged the credibility of that eyewitness (namely, the victim). The Court finds that strategy objectively reasonable under the facts as known at the time of trial.

Appellate counsel *did* consult a medical expert, and the expert was unable to conclude that the victim was not strangled despite being provided with her testimony regarding the allegations. Defendant's suggestion that the facts pointed to the impossibility of the victim's version of events is misplaced given the expert's inability to exclude the possibility of strangulation on the basis of the same facts.

Defendant next argues that defense counsel was ineffective by failing to acquire the medical records of the victim's exam at Owosso Memorial Hospital (OMH) following the attack. We disagree. Assuming that defense counsel's failure to request discovery of the OMH records under MCR 6.201(C)[4] was objectively unreasonable, defendant has failed to show that there is a

---

[4] MCR 6.201(C) provides, in relevant part:

> (1) Notwithstanding any other provision of this rule, there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2).

> (2) If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are

reasonable probability that the outcome of defendant's trial would have been different had defense counsel requested the OMH records. On cross-examination, defense counsel elicited from Tenbusch that she had contacted OMH and was informed that the victim had been examined at OMH and that "there were no internal soft tissue swelling that came up on the CT or the x-ray." Consequently, the alleged favorable evidence was presented to the jury.

Next, defendant argues that defense counsel was ineffective by failing to object to Police Chief Nick Chiros's testimony that he did not observe any marks on the victim that were consistent with defendant's claim that the victim jumped on him and that he must have accidentally hit her, as well as his testimony that the marks he observed on the victim's neck were consistent with strangulation. Defendant asserts that the first statement vouched for the victim's credibility, and that both statements amounted to expert testimony without laying a foundation to establish how or why Chief Chiros had the expertise or education to determine whether the alleged markings on the victim's neck were consistent with strangulation or a witness's version of events.

The trial court found as follows with respect to this claim:

> Defendant claims that trial counsel allowed Chief Chiros to give expert testimony without the prosecution proffering him as an expert. The record does not support this assertion. Chief Chiros testified as a lay witness and described his observations. Challenging him as an expert would have been frivolous and futile, and trial counsel need not make such objections.

MRE 701 governs the admissibility of opinion testimony from a lay witness:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

MRE 702 governs the admissibility of opinion testimony from an expert witness:

---

likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.

(a) If the privilege is absolute, and the privilege holder refuses to waive the privilege to permit an in camera inspection, the trial court shall suppress or strike the privilege holder's testimony.

(b) If the court is satisfied, following an in camera inspection, that the records reveal evidence necessary to the defense, the court shall direct that such evidence as is necessary to the defense be made available to defense counsel. If the privilege is absolute and the privilege holder refuses to waive the privilege to permit disclosure, the trial court shall suppress or strike the privilege holder's testimony.

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Court has held that a police officer may provide lay opinion testimony regarding observations when his or her "opinion [was] formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), modified and remanded on other grounds 433 Mich 862 (1989). However, "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense[.]" *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (quotation marks and citation omitted).

Defendant argues that this testimony was elicited without laying a foundation for the expert testimony. However, there was nothing scientific or technical about Chief Chiros's testimony. He did not testify that he relied on specialized knowledge to form his conclusion that the red marks he observed on the victim's neck did not appear to have been caused by an accidental injury and were "typical-like" of someone putting their hands around a neck to try to choke someone. His testimony was his own opinion and rationally based on his perception of the injuries. The average person could have formed the same opinion as Chief Chiros, and it did not require an expert opinion. Counsel's failure to object to the testimony was not objectively unreasonable.

Defendant next argues that defense counsel was ineffective by filing a motion in limine to introduce evidence that the victim enjoyed rough sex because evidence that she liked rough sex is not subject to the rape-shield statute and, therefore, counsel did not need to seek admission of the evidence under the statute. He contends that counsel's argument "was based on a mistake of law" and that counsel should have sought to generally admit the evidence during trial. He also argues that defense counsel failed to recognize that the prosecutor opened the door to the admission of the evidence. Defendant raised this claim in his motion for a new trial.

The trial court rejected this claim, stating as follows:

Defendant next alleges that trial counsel erred with respect to a motion in limine concerning the rape shield statute, MCL 750.520j. Trial counsel filed a motion seeking to introduce evidence that the victim liked rough sex. The Court denied the motion, finding that the rape shield statute precluded introduction of such evidence.

Significantly, the Court notes that appellate counsel's motion shares a fatal defect with ttrial [sic] counsel's motion. Under the rape shield statute, a party seeking to admit evidence through one of the exceptions must first make an offer of proof. MCL 750.520j(2). Neither trial counsel nor appellate counsel has satisfied this requirement. Trial counsel attached a number of Facebook posts about

-6-

rough sex, and appellate counsel relies on those same posts.[5] Neither attorney has made any showing that Defendant and the victim engaged in rough sex on even one occasion. . . .

Defendant argues that trial counsel erred by not drawing the Court's attention to *People v Sharpe*, [502 Mich 313; 918 NW2d 504 (2018)]. Assuming trial counsel was deficient on this prong, Defendant cannot demonstrate any prejudice because the Court explicitly relied on *Sharpe* when denying the motion. Defendant relies on *Sharpe* to suggest that evidence concerning rough sex is not subject to the rape shield statute. The Court disagrees with appellate counsel's interpretation of the case because *Sharpe* acknowledges that:

> The rape-shield statute constitutes a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant. The statute also reflects a belief that inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury. Finally, the statute protects the privacy of the alleged victim and, in so doing, removes an institutional discouragement from seeking prosecution. [*Sharpe* at 326 (cleaned up).]

With that in mind, the Court finds that Defendant is not entitled to relief on this issue.

Defendant claims that defense counsel was ineffective by seeking to admit the evidence at a pretrial hearing instead of simply introducing the evidence at trial because the evidence did not violate the rape-shield statute, MCL 750.520j. However, in ruling on the motion in limine, the trial court found that the evidence was precluded by the rape-shield statute. Undoubtedly the trial court would have ruled consistently had defendant waited to move to admit the evidence until trial. Defendant has not shown that counsel's decision to move to admit the evidence before trial was objectively unreasonable, nor has he shown that the result of the proceeding would have been different had counsel waited until trial to move to admit the evidence.[6]

---

[5] The court said that "it does not appear that the victim authored any of these posts, but is instead reposting content created by someone else. It is arguable whether these posts support an inference that the victim liked rough sex. The more accurate inference is that the victim liked reposting messages about liking rough sex."

[6] Defendant also argues that defense counsel was ineffective by failing to recognize that the prosecution opened the door to introduction of the evidence when Tenbusch testified that the vaginal injuries she observed were consistent with trauma because such injuries do not usually occur during normal coitus in a person who is sexually active. He argues that Tenbusch's

-7-

We now turn to defendant's argument that defense counsel was ineffective by failing to object to the admission of enhanced photos from the victim's Sexual Abuse Nurse Exam (SANE) because the photos were not properly authenticated under MRE 901. Defendant raised this claim in his motion for a new trial. The trial court found that defense counsel did object and that counsel "cannot be ineffective for failing to object when he actually raised the objection." We agree with the trial court.

Defendant also argues that defense counsel was ineffective by failing to object to the admission of the SANE photos because Tenbusch could not testify whether each injury in the photos was related to the events that occurred on the date of the incident. Defendant raised this claim in his motion for a new trial and the trial court found that an objection would have been frivolous. Specifically, the trial court concluded that the foundational requirement for admission of the photos was met by the testimony that they accurately reflected that which was photographed. Tenbusch testified that she observed multiple injuries to the victim's body. She said that she looked for areas of injury consistent with what was reported to her and that she photographed those areas as well as the areas where the victim indicated an injury. We agree with the trial court that any objection would have been futile and therefore unnecessary. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant's final claim of ineffective assistance of counsel is that counsel failed to move to suppress the statement he made to law enforcement during a custodial interrogation without being advised of his rights as required by *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The trial court at the motion for new trial rejected this argument, noting that defendant's affidavit indicated that the officers interviewed him at his home and that he was not subject to any restraints. The trial court also noted that the affidavit did not indicate that defendant told trial counsel about any circumstances surrounding the questioning that would have provided a basis to suppress his statements.

Defendant's affidavit does not state that he informed defense counsel about the circumstances of the questioning. Nor does his motion for a new trial, or his brief on appeal, identify which incriminating statements trial counsel should have sought to suppress. Presumably, defendant is referring to Chief Chiros's testimony that defendant said that he was jealous that the victim was running around with other guys, and that "she came in the door and, when she got home, and jumped on him, and he must have accidentally hit her." Defendant has failed to show that his statement was incriminating. Under these circumstances, defendant has not shown that counsel was ineffective by failing to move to suppress defendant's statements.

Moreover, *Miranda* warnings only need to be given where there is custodial interrogation. *People v Zahn*, 234 Mich App 438, 449; 594 NW2d 120 (1999). This requires that the person " 'has been taken into custody or otherwise deprived of his freedom of action in any significant

---

statement "assumed that [the victim] typically engaged in 'normal coitus' rather than forceful trauma and that is why she had injury to her vaginal area." Tenbusch did not, however, opine on the cause of the victim's injuries.

way.' " *People v Hill*, 429 Mich 382, 387; 415 NW2d 193 (1987) (citation omitted). The limited record in this case, which includes the statements in defendant's affidavit and the testimony of Chief Chiros, indicates that defendant was not in custody for purposes of *Miranda* because his movement was not restricted to the degree of a formal arrest. At most, he was instructed to stand up.[7] Defendant acknowledges in his brief on appeal that he was not arrested before the questioning. There is no allegation that he was restrained. The victim let the officers into the apartment. Defendant was questioned in the apartment. There is no evidence that he was required to answer questions or that he was prevented from leaving. Chief Chiros allegedly did not specifically inform defendant that he was not under arrest, but defendant does not cite any caselaw or statute that provides that such a statement is necessary. Considering the totality of the circumstances, defendant was not "in custody" such that *Miranda* warnings were required. The allegations in defendant's affidavit did not support a motion to suppress. Defendant has not demonstrated that defense counsel's failure to move to suppress his statements was objectively unreasonable.

The next issue raised on appeal is defendant's claim that he was denied due process and a fair trial because the prosecution failed to provide exculpatory hospital medical records to defense counsel. We disagree. We review the due process claim de novo, *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016), and the denial of a motion for new trial for an abuse of discretion by the trial court, *Cress*, 468 Mich at 691.

Defendant contends that the prosecution's failure to provide the defense with the victim's medical records from OMH was both a violation of his right to discovery under MCR 6.201(B)(1) and a violation of his constitutional right to exculpatory evidence under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). See also MCR 6.201(B). In denying defendant's motion for new trial on this ground, the trial court stated:

> Defendant has not demonstrated that the prosecution had the alleged *Brady* material within its possession. The records are in the possession of the hospital, and the People correctly note that they could not obtain those records without a search warrant. Defendant has not demonstrated the favorability of these records, and the Court declines to guess or to order a fishing expedition based on Defendant's guess. See *People v Stanaway*, 446 Mich 643, 680[; 521 NW2d 557] (1994).

Defendant has failed to show that the prosecution suppressed, i.e., possessed yet did not turn over to defendant, the victim's medical records. There is no evidence in the record that the prosecution possessed the medical records, or that the medical records were in the prosecution's control. "For due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). "A prosecutor is not required to 'seek and find exculpatory evidence' or assist in building the defendant's case, and a prosecutor is not required to 'negate every theory consistent with defendant's innocence.' " *People v Dickinson*,

---

[7] In contrast, Chief Chiros testified that when he shook defendant to wake him up, defendant "got up like he was startled."

321 Mich App 1, 16; 909 NW2d 24 (2017) (citation omitted). The trial court's determination that there was no *Brady* violation was not erroneous.

Defendant's next argument is that he is entitled to a new trial due to prosecutorial misconduct. Again, we disagree.

Because defendant did not preserve his arguments regarding any of the alleged misconduct by timely and specifically objecting and requesting a curative instruction at trial, this Court's review is for outcome-determinative plain error. See *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). Under a plain-error review, defendant bears the burden of demonstrating that an error occurred, that the error was clear or obvious, and that the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceeding." *Id.* Even if all three requirements are met, reversal is only warranted when the plain error resulted in an innocent defendant's conviction, or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Id.* (quotation marks and citation omitted; alteration in original). In the context of prosecutorial misconduct, reversal only is warranted if a curative instruction would have been inadequate to cure any prejudice. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

Defendant points to two statements of fact made by the prosecutor during opening statement and closing argument, which the prosecutor on appeal agrees was not supported by testimony at trial. Although defendant did not object during trial, he did raise the issue at his motion for new trial. The trial court rejected the argument, opining as follows:

> As to the comment during opening statement, the prosecutor was stating a fact he expected to prove during trial, which is a proper purpose for opening statements. *People v Meissner*, 294 Mich App 438, 456[; 812 NW2d 37] (2011).

> Regarding closing arguments, the Court acknowledges that the trial testimony did not establish [that defendant] was an MMA fighter. However, this remark was ultimately irrelevant because this case stems from an assault on a sleeping victim, not a fight between combatants.

> Looking at both opening and closing statements together, the Court repeatedly instructed the jury that the attorney's statements were not evidence, and could not be considered as much. M Crim JI 2.3, 2.5, 3.5. The Court instructed the jury to decide the case based solely on the properly admitted evidence. M Crim JI 3.5. Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors. *People v Mahone*, 294 Mich [App] 208, 212[; 816 NW2d 436] (2011). Accordingly, the prosecutor's remarks, although erroneous, were not outcome determinative and did not deprive defendant of a fair trial.

We agree with the trial court's analysis and are not persuaded that reversal is required.

Next, defendant argues that the trial court erred in denying his request for the appointment of experts at public expense to establish trial counsel's ineffectiveness for defendant's motion for

new trial. Defendant did present affidavits from the proposed experts. We disagree. We review the trial court's decision for an abuse of discretion. *People v Leuth*, 253 Mich App 670, 689; 660 NW2d 322 (2002). Defendant's request was for the appointment of the experts to testify at a *Ginther* hearing. The trial court, however, denied defendant's motion for a *Ginther* hearing. Therefore, the basis for appellate counsel's request for appointment of expert witnesses did not exist. Under these circumstances, defendant has failed to show that he was denied due process or that the trial court abused its discretion by denying defendant's motion for appointment of experts at public expense for the purpose of compensating each of the experts for their testimony at a *Ginther* hearing.

Defendant's next argument is the trial court improperly admitted enhanced photographs of the victim taken by Chief Chiros. We disagree. We review the trial court's decision to admit photographic evidence for an abuse of discretion. *People v Head*, 323 Mich App 526, 539-540; 917 NW2d 752 (2018).

The factual premise of defendant's argument that the trial court abused its discretion by admitting an enhanced photo of the victim that was taken by Chief Chiros is misplaced as the photo was not enhanced but was a closeup photo of another photo that was properly authenticated and admitted. Although Chief Chiros did refer to the photo in question as being "enhanced," he explained that what he meant by "enhanced" was that it was "a closeup so the marks stick out better." The trial court did not abuse its discretion by admitting the photo.

Defendant next argues that the trial court erred in admitting hearsay statements of the victim under the excited utterance exception. MRE 803(2). This Court reviews a trial court's evidentiary ruling for an abuse of discretion. *People v Mardin*, 487 Mich 609, 614; 790 NW2d 607 (2010). But when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). We are not persuaded that the trial court abused its discretion in admitting the statements.

Defendant argues that the trial court abused its discretion by admitting the victim's statements to Chief Chiros under MRE 803(2). He asserts that the victim did not remain under the stress of the incident throughout the night, that her statements were probably made "at least eight hours" after the startling event, and that the statements were not spontaneous because they were made in response to "repeated questioning." The trial court ruled the testimony admissible, stating, "I'm going to allow it for that limited purpose, and I think that the Chief laying a foundation of the condition that she was in: confused, upset—I think would fall under the hearsay exceptions. So, I'm going to allow him to testify about what she told him regarding her condition." Chief Chiros testified that he got out of his car and asked the victim to get into the backseat of his patrol car. The victim told him that she was at her apartment with her boyfriend, Craig, and that he had beat her most of the night. She said that she was afraid of defendant, that she had not called the police because she was afraid of him, and that he had strangled her and put her in choke holds.

A statement is admissible under MRE 803(2) "if (1) there was a startling event and (2) the resulting statement was made while the declarant was under the excitement caused by that event." *People v Layher*, 238 Mich App 573, 582; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001). The principle underlying the excited utterance exception is that the declarant must be under such an

emotional upheaval caused by a startling event that the declarant is incapable of consciously and calmly reflecting sufficiently to be able to lie about that event. *People v Smith*, 456 Mich 543, 550-551; 581 NW2d 654 (1998); *People v Straight*, 430 Mich 418, 423-425; 424 NW2d 257 (1988). The statement must be made while the declarant "was still under the influence of [the] overwhelming emotional condition," but there is no particular timing requirement otherwise. *Straight*, 430 Mich at 424-425. "Though the time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the excitement when the statement was made," the focus of the exception is on the declarant's lack of capacity to fabricate, not the lack of time to fabricate. *Smith*, 456 Mich at 551 (quotation marks and citation omitted).

The victim arrived home around 11:30 p.m. and went to sleep. She was awakened at some point by defendant and the events of the night occurred over the course of "a few hours" after that point. The victim said that she was able to get away from the apartment sometime between 7:30 a.m. and 9:00 a.m. Chief Chiros said that he saw the victim on a road approximately six to seven blocks from her apartment around 10:14 a.m. She was crying uncontrollably, and she looked worn out and confused and upset. At first the victim would not answer questions and began to cry harder. Chief Chiros's testimony regarding the victim's demeanor, the victim's own testimony that she was able to get out of the apartment between 7:30 a.m. and 9:00 a.m., and Chiros's testimony that the victim was six or seven blocks away from her apartment when he saw her at 10:14 a.m. support a finding that the victim was still under the emotional stress of the assault, and there is nothing in the record to suggest that she had the capacity to fabricate any statements, and the statement related to the circumstances of the startling event.

Defendant also points out, without discussion, that the victim's statements were made in response to police questioning when Chief Chiros observed her on the street. He cites no authority for the proposition that a person cannot be deemed still under the stress of a startling event if answering questions about it. Indeed, this Court has upheld the admission of testimony under the excited utterance exception when the statements at issue were made in response to police questioning. See *People v Sanders*, 163 Mich App 606, 611; 415 NW2d 218 (1987) ("Although certain of the victim's utterances were in response to the officer's questioning, they were nonetheless made while the victim was under the stress of the excitement.").

The trial court's ruling that the statement was an excited utterance was not outside the range of principled outcomes and was not an abuse of discretion.

Next, defendant challenges the scoring of the sentencing guidelines, in particular OV 3, OV 7, OV 10, and PRV 5. We review de novo whether the trial court accurately interpreted and applied the sentencing guidelines. *People v Sours*, 315 Mich 346, 348; 890 NW2d 401 (2016). We review for clear error the trial court's findings of fact under the sentencing guidelines, which must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error occurs when this Court is left with a firm and definite conviction that a mistake has been made. *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019).

Defendant first argues that the trial court erred by scoring 10 points for OV 3.[8] Specifically, defendant argues that there was no evidence that the victim received medical treatment for injuries related to the sexual assault. The victim went to the Flint YMCA and had a rape kit performed. The SANE nurse examiner performed a vaginal exam and observed areas of redness, abrasions, and tearing in both the inside and outside vaginal area. There was no evidence, however, that medical treatment was necessary for the victim's injuries. A preponderance of the evidence did not support the trial court's determination that the victim's injuries required medical treatment. See *People v Armstrong*, 305 Mich App 230, 246; 851 NW2d 856 (2014) ("Even if the trial court properly considered the prosecutor's statement that the SANE report showed that the complainant suffered from a reddened and tender hymen, the evidence did not support assessing 10 points under OV 3 because there is no evidence that medical treatment was necessary for her injury."). Instead, the evidence supports a five-point score for OV 3 on the basis that the victim suffered a bodily injury that did not require medical treatment. MCL 777.33(1)(e).

Although the trial court erroneously assigned a 10-point score, instead of five points, to OV 3, this scoring error does not entitle defendant to resentencing. A score of only five points, rather than 10 points, would decrease defendant's total OV points from 85 to 80, and thus would not change his placement in OV Level V (80-99 points). MCL 777.62. Because this scoring error does not affect defendant's sentencing guidelines range, defendant is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006); *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016).

Defendant also challenges the scoring of 50 points for OV 7. Under OV 7, MCL 777.37, a defendant is assessed 50 points for OV 7 when "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(a). This Court has defined "excessive brutality" as "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018). Because of the language "during the offense" used in MCL 777.37(1)(a), the focus of OV 7 is "solely on conduct occurring during the [sentencing] offense." *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016). Defendant treated the victim with cruelty beyond the usual brutality of a sexual assault by penetrating her vaginally with his fist while she was unconscious. The excessive force and brutality executed by defendant upon the victim was evidenced by the physical injury to her vagina that was consistent with a forceful trauma and her vaginal pain. A preponderance of the evidence supports the trial court's finding that defendant treated the victim with excessive brutality. The trial court did not err by assessing 50 points for OV 7.

Defendant next argues that the trial court erred by assessing 15 points for OV 10. For OV 10, a score of 15 points is appropriate if predatory conduct was involved. MCL 777.40(1)(a). A score of 10 points is appropriate if the offender exploited a victim's physical disability, mental

---

[8] At the original sentencing, defense counsel stipulated to an assessment of 25 points for OV 3 for the CSC-I charge. Defendant challenged the scoring of OV 3 in his motion to correct an invalid sentence, asserting that zero points should have been assessed. The trial court agreed at resentencing that an assessment of 25 points was not warranted. The court assessed 10 points.

disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status. MCL 777.40(1)(b). A score of five points is appropriate if the offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious. Defendant argues that he should have only been assessed 5 points due to the victim being unconscious.

The Supreme Court in *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008), stated that OV 10 is properly scored at 15 points when the following inquiries are answered in the affirmative:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

With respect to the first question, the evidence showed that defendant engaged in conduct before the commission of CSC-I—he strangled the victim to the point she lost consciousness. With respect to the second question, the conduct was directed at the victim, who was vulnerable given her domestic relationship with defendant and her unconsciousness at the time of the sexual assault. With respect to the third question, it could reasonably be inferred that strangling the victim would reduce her consciousness, facilitating a sexual assault. The trial court did not err by assessing 15 points for OV 10 for predatory conduct.

We now turn to defendant's challenges to the scoring of the sentencing guidelines for his strangulation conviction.[9] Defendant first argues that the trial court erred in assessing 25 points for OV 3 because there was no evidence that the victim suffered life-threatening injuries from the strangulation. Rather, defendant argues that he should only have been assessed 10 points. Under *People v Rosa*, 322 Mich App 726, 747; 913 NW2d 392 (2018), 25 points are appropriate where the victim was strangled to the point of unconsciousness, as was the case here.

Defendant also challenges the scoring of 50 points for OV 7. In rejecting defendant's argument, the trial court noted that this Court has affirmed the assessment of points for OV 7 in other strangulation cases. The trial court cited *Rosa*, 322 Mich App at 743-744, and *People v Oliver*, unpublished per curiam opinion of the Court of Appeals, issued May 22, 2018 (Docket No. 339826); unpub op at 5. The court found that an assessment of 50 points was warranted on multiple grounds. The court found that defendant's conduct constituted sadism: "In this case, Defendant attacked the victim to make her suffer for perceived infidelity. In doing so, he forced her brain to shut down due to the deprivation of oxygen." The court also found that defendant's

---

[9] Where consecutive sentences are involved, the guidelines must be scored for each offense. MCL 771.14(2)(e)(i).

-14-

conduct constituted torture: "Again, the Defendant attacked the victim as punishment or revenge for perceived infidelity." The court also found that strangling the victim to the point of unconsciousness "far exceeds the brutality needed to complete this offense." The court found with respect to "seriously egregious conduct" that "strangling the victim to the point of unconsciousness far exceeds the minimum force necessary to complete this offense" and that defendant intended to increase the victim's fear by a considerable amount: "Defendant strangled her to the point of unconsciousness to convince her that death was not only possible, but imminent. The victim testified that she thought she was going to die." We are satisfied that the trial court properly justified its scoring of 50 points for OV 7.

Defendant's last challenge to the scoring of the offense variable is the assessment of 10 points for OV 10, arguing that the victim was not a vulnerable victim. The trial court assessed 10 points for OV 10, finding that defendant "used his domestic relationship to put her in a position where he could assault her." Ten points is appropriate where "The offender exploited a victim's physical disability, mental disability, youth or agedness, or a *domestic relationship*, or the offender abused his or her authority status." MCL 777.40(1)(b) (emphasis added).

The trial court concluded that a domestic relationship existed and that defendant exploited that relationship:

> The trial testimony thoroughly established the existence of a domestic relationship between Defendant and the victim. The Court is mindful that there [sic] mere existence of a domestic relationship does not automatically equate with victim vulnerability. MCL 777.40(2). However, the evidence in this case preponderates towards a finding of vulnerability. Defendant had been staying with the victim in her home. She had been out for the evening and returned shortly before midnight. Because of the domestic relationship, Defendant had access to the victim when she was alone and isolated. The victim was in bed when Defendant assaulted her, meaning he knew to strike her when she was at her most vulnerable. The victim trusted Defendant to be in her house late at night, and Defendant exploited that trust by committing these crimes. The Court finds that it properly assessed 10 points for OV 10.

The victim testified that she had been in a dating relationship with defendant for eight or nine months and that defendant was temporarily staying with her while his house was being remodeled. She did not indicate the duration of the cohabitation. However, the two were clearly residing together in the apartment on the date when the strangulation occurred. Further, the testimony reflects that defendant acted to exploit this relationship by screaming at her while she was asleep and accusing her of cheating before he strangled her. The evidence supported the trial court's determination that defendant exploited a domestic relationship. The trial court did not err by assessing 10 points for OV 10.

Defendant's final challenge to the scoring of the sentencing guidelines is the trial court's assessment of 15 points for PRV 5 for both convictions. Fifteen points are to be assessed when the offender has five or six prior misdemeanor convictions. MCL 777.55(1)(b). " 'Prior misdemeanor conviction' means a conviction for a misdemeanor under a law of this state, a political subdivision of this state, another state, a political subdivision of another state, or the

United States if the conviction was entered before the sentencing offense was committed." MCL 777.55(3)(a). Defendant argues that a prior trespass conviction was not a scoreable misdemeanor under *People v Williams*, 191 Mich App 269; 477 NW2d 877 (1991), and that he therefore had a total of four scorable misdemeanors.

The trial court considered and rejected defendant's argument, holding that *Williams* was inapplicable:

> The *Williams* Court did not hold that courts may never assess points based on trespass. Rather, the Court of Appeals held that the specific rational [sic] used by the trial court did not warrant the assessment of points. The trial court assessed points for a conviction of trespass because of a finding that the trespass was related to the consumption of alcohol. The trial court then found that the consumption of alcohol justified the assessment of points for trespass as a drug related offense. That's simply not applicable to the facts at bar. Moreover, the guidelines have changed since *Williams*. When *Williams* was decided in 1991, trespass would likely not have been scored or scorable under PRV 5. PRV 5 did not score for all property crimes, only for those property crimes involving property destruction. Under the guidelines now, the Courts must assess points for any offense against property, MCL 777.55(2)(a). The Court finds that it properly assessed points for trespass at PRV 5.

MCL 777.55(2)(a) directs the sentencing court to "count a prior misdemeanor conviction . . . only if it is an offense against a person or property . . . ." Trespass is an offense against property. Moreover, we agree with the trial court that *Williams* is not applicable to this case. In *Williams*, a misdemeanor was to be scored under PRV 5 only if it related to one of the enumerated crime groups, which were "assault, burglary, criminal sexual conduct, robbery, or weapons possession." 191 Mich App at 277. This Court rejected the trial court's conclusion that the defendant's misdemeanor convictions for trespass, impaired driving, reckless driving, and disorderly conduct were scorable because those offenses occurred following the defendant's consumption of alcohol. *Id.* As noted above, MCL 777.55 now includes all property crimes, not just the enumerated groups in *Williams*. Accordingly, we conclude that the trial court properly scored PRV 5.

Defendant's final argument is that the trial court erred in denying his request for a *Ginther* hearing. We disagree. We review the trial court's decision on whether to hold an evidentiary hearing for an abuse of discretion. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). Defendant does not provide any argument to establish how the trial court's decision to deny the motion was an abuse of discretion. In the context of this issue, he does not specifically address any of the numerous claims of ineffective assistance of counsel that he raised in his motion for a new trial, nor does he discuss the trial court's reasons for denying the motion. Further, he merely requests that this Court remand the case to the trial court for a *Ginther* hearing if this Court determines that the record is lacking. This Court has already denied defendant's motion to remand for a *Ginther* hearing "for failure to persuade the Court of the necessity of a remand at this time." This Court's order provided, however, that "[d]enial of remand is without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Pakosz*, unpublished order of the Court of Appeals, entered July 22, 2021

-16-

(Docket Nos. 352918, 356192). Under these circumstances, defendant has failed to show that the trial court abused its discretion by denying defendant's motion for a *Ginther* hearing.

Affirmed.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Christopher M. Murray